### JOHN B. PITTENGER

*v.*

### JULIA A. PITTENGER *et al.*

*Opinion filed April 20, 1904.*

1. DEEDS—*fraud, to avoid deed, must be connected with its execution.* Fraud or undue influence, in order to avoid a deed, must be directly connected with the execution of the instrument.

2. SAME—*substantial non-performance is necessary to avoid deed made in consideration of support.* A deed made in consideration of support will not be set aside in equity unless there has been such substantial failure by the grantee in material matters as to render performance of the rest a thing different from that contracted for.

3. EQUITY—*chancellor may disregard advisory verdict.* On a bill to set aside a deed made in consideration of support, the verdict of the jury as to controverted issues of fact submitted to it by the chancellor is merely advisory and may be disregarded.

4. SAME—*error in instructions is not material if the verdict is merely advisory.* Error in instructions in a chancery case is not material where the verdict is merely advisory, the material question to be considered by the Supreme Court being whether the decree rendered is justified by the competent evidence in the record.

APPEAL from the Circuit Court of Christian county; the Hon. TRUMAN E. AMES, Judge, presiding.

This is a bill, filed on February 28, 1902, in Christian county by the appellees against the appellant, praying that a certain deed, executed by John Pittenger, Sr., during his lifetime, and the appellee, Julia A. Pittenger, his wife, conveying eighty acres of land, described in the bill, to the appellant, John B. Pittenger, their son, be set aside, canceled and declared null and void, and that the appellees, complainants below, and the appellant, defendant below, be vested with the title to said land as the widow and heirs-at-law of the said John Pittenger, Sr. An answer was filed to the bill by the appellant, denying the material allegations thereof. To this answer replication was filed. A jury was called, to whom certain questions of fact were submitted upon motion of the complainants below. Under instructions, given by the court on behalf of both parties, the jury returned a verdict, embodying their answers to the questions so propounded to them. At the August term, 1903, the court rendered a decree substantially in accordance with the bill, setting aside the deed in question and declaring the same to be null and void. The decree recites that the court "considered the evidence, so offered on said trial, and the issues so found by said jury;" and the court found "from the evidence and the issues so submitted to said jury," that the allegations of the bill were true, etc.

The material facts of the case, as shown by the pleadings and proofs, are substantially as follows:

John Pittenger, Sr., being on September 14, 1898, an old man about eighty years of age, and the appellee, Julia A. Pittenger, his wife, an old lady about seventy-five years of age, executed on that day a warranty deed, conveying, for an expressed consideration of $4000.00, to their son, the appellant, John B. Pittenger, the eighty acres in question. This deed was signed both by John Pittenger, Sr., and his wife, Julia A. Pittenger, in the presence of Charles Brooks and J. A. Burchfield, as witnesses, and acknowledged before one Lyman G. Grundy,

a notary public and also an attorney at law, and was recorded on September 15, 1898. The fee of the land was in John Pittenger, Sr., and not in his wife, and the premises were then occupied by John Pittenger, Sr., and his wife as a home. At the same time, on September 14, 1898, John B. Pittenger, appellant here, executed a contract in writing, wherein, in consideration of the execution and delivery to him of the warranty deed so executed by his father and mother, the appellant agreed "for himself, his heirs, executors and assigns, to provide for the support and maintenance of the said John Pittenger and Julia A. Pittenger for and during their natural lives, and furnish and supply them with the reasonable comforts and necessaries of life, suitable to their condition, including such medicines and medical attendance as they may require;" and it was therein "further agreed and understood that the said John Pittenger and Julia A. Pittenger shall have the right to retain the possession of said premises where they now reside as their home, free of charge, to be so occupied by them until their death, unless, by further agreement hereafter, some other arrangements for their home shall be made." The original agreement, as executed on September 14, 1898, contained a provision that the appellant would pay to his father and mother, in addition to the performance of the matters mentioned above, the amount of $100.00 a year as long as they lived, or in case of the death of either of them, he would pay the said amount to the survivor as long as he or she should live.

The contract, so made on September 14, 1898, contemporaneously with the deed and signed by the appellant, was subsequently modified and changed by leaving out the provision, which required the appellant to pay the sum of $100.00 per year. The record contains a letter, dated October 28, 1899, signed by John Pittenger, Sr., and Julia A. Pittenger, his wife, addressed to L. G. Grundy, the attorney who drew the original deed and contract,

which letter was as follows: "You may recollect of writing a memorandum of agreement for John B. Pittenger on the 14th day of September, 1898, and in that writing is mentioned the payment annually of $100.00 to us, or our survivor. We do not need that amount of money and you may mark that part off of that agreement, so that no one in the future can make him or his heirs or his executors any trouble, or cause him or them to pay that amount." This letter was received by Grundy, and, in pursuance thereof, a new contract, drawn by him and dated October 30, 1899, was executed by John B. Pittenger, and was the same in all respects as the contract of September 14, 1898, except that it left out the provision in regard to the payment of $100.00 per year. Thereupon, the old contract was destroyed, and two copies of the new contract of October 30, 1899, were executed, and one of them was retained by the appellant, and the other was delivered to his father and mother. The latter copy was produced upon the trial from the possession of the complainants below, appellees here.

On February 1, 1900, John Pittenger, Sr., died intestate, leaving his widow, the appellee, Julia A. Pittenger, and two sons, the appellant, John B. Pittenger, and the appellee, Charles Pittenger, and a number of grandchildren, who are minors suing here by their next friend, Charles Pittenger. The complainants in the bill below were the widow, and the son, Charles, and the grandchildren, and the defendant was the present appellant. The bill charges that the deed was procured by the appellant through fraud and undue influence, and without any intention of in good faith caring for and supplying the comforts and necessaries of life to the said John Pittenger, Sr., and Julia A. Pittenger, his wife, while they lived, and that the sole object of the appellant was to get possession of the property. The bill furthermore charges that, during the lifetime of John Pittenger, Sr., and since his death, the appellant has neglected and refused to

furnish his father and mother with proper and suitable clothing and proper and suitable eatables and necessary fuel, and has neglected to pay the $100.00 already mentioned; that he has permitted the appellee, Julia A. Pittenger, to remain alone and neglected, and refused to get anyone to care for her or to furnish her and keep for her a supply of water and fuel; that the bread he furnished to her during a portion of the time was old and stale, etc.

The answer of the appellant denied all the allegations in regard to the failure to support his father and mother, and claimed that he had faithfully performed the contract, made for their support, and in consideration of which the deed was executed to him. The answer denied that the deed was obtained by any fraud or undue influence, but was entered into voluntarily, and in order that the grantors therein might be supported and cared for in their old age. The answer also sets up that in October, 1899, the provision in the contract in regard to the payment of the $100.00 was eliminated therefrom by the written direction of his father and mother, and upon their statement that they did not need the $100.00 specified in the contract; and that the letter of October 28, 1899, and the contract, executed on October 30, 1899, were deposited in a certain bank named in the answer. The answer alleges that the attorney, Grundy, went to the house of John Pittenger, Sr., and Julia A. Pittenger at their request, and at the request of the appellant, and drew the papers above referred to, the terms of which were dictated by the said John Pittenger, Sr., in the presence of Julia A. Pittenger, and read over by them both and voluntarily signed by them both; and that the original contract was destroyed by him at the request of John Pittenger, Sr., and that Julia A. Pittenger was informed in regard to the same. The answer denies all the allegations as to failure to support or maintain his father and mother in accordance with the contract, and denies that the appellant refused to supply them with water, fuel, or bread, etc.

J. E. HOGAN, and L. G. GRUNDY, for appellant.

J. C. & W.' B. McBRIDE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The issues, presented by this record, are principally issues of fact. On September 14, 1898, the father and mother of appellant executed to him a deed of their homestead farm, consisting of eighty acres, upon condition that he would support them during their natural lives, and furnish and supply them with the reasonable comforts and necessaries of life, suitable to their condition, including such medicines and medical attendance as they might require, giving them the right to retain the possession of the premises as their home free of charge, to be kept by them until their death, unless by further agreement thereafter some other arrangement for their home should be made; and also that he would pay them the sum of $100.00 in money per year.

The main question of fact is, whether or not the appellant has fulfilled the contract, so made by him.

One of the charges in the bill is, that the deed in question was procured by fraud and undue influence. We find no evidence whatever in the record to sustain this charge. The fraud or undue influence, which will avoid a will or deed, must be directly connected with the execution of the instrument. (*Guild* v. *Hull*, 127 Ill. 523; *Francis* v. *Wilkinson*, 147 id. 370). The evidence shows that the deed was executed voluntarily by John Pittenger, Sr., and Julia A. Pittenger, his wife, on September 14, 1898. At that time the fee of the property was in John Pittenger, Sr., and Julia A. Pittenger had only the interests of homestead and inchoate dower. John Pittenger, Sr., lived, after the execution of the deed, until February 1, 1900, at which time he died still owning the fee. There is no testimony whatever in the record that the appellant failed to properly support and maintain his father

and mother during this period. The testimony, introduced for the purpose of showing appellant's failure to carry out the contract, is in relation to his alleged treatment of his mother after his father's death. The contract did not provide for the support of the heirs of John Pittenger, Sr., but only for the support of himself during his lifetime and of his wife during her lifetime. When he died, therefore, the contract was ended so far as he was concerned. The complainants below have only sought to prove that appellant failed to properly support his mother, and pay her $100.00 a year, after the death of the father on February 1, 1900. The questions involved, therefore, which relate to the manner, in which the contract was carried out after the death of the father, divide themselves into two parts: First, was the appellant at fault in not furnishing his mother proper support and maintenance after the death of his father? and second, was he at fault in not paying her $100.00 a year in money, as it was provided that he should do in the original contract of September 14, 1898?

*First*—Appellant lived with his wife and children—he having been married some twenty-six years and being over fifty years of age—on his farm about a quarter of a mile distant from the farm here in controversy, being the home of his mother. By the terms of the contract she had a right to remain upon the home farm free of charge, and occupy it until her death. But the contract contemplates that, by agreement with her, some other arrangement might be made for a home for her. The proof shows that the appellant offered her a home at his house, and tried to persuade her to come and live with him, instead of living alone upon the farm here in controversy. She did once or twice go to his house and remain there a month or more, but left and went back to her own home because of the noise made by appellant's children, or others concerned in the management of his farm. She also stated that her husband had requested

that she should remain upon the home farm. Her determination to remain upon the farm, instead of living with the appellant, required him to furnish her with the necessary supplies for living at her own home, and also to furnish her with company, or somebody to stay with her and look after her in her old age. We think the proof shows by an overwhelming preponderance that the appellant fulfilled his obligations in this regard. The appellee, Julia A. Pittenger, remained at the home farm, with the exception of an occasional visit for a few weeks to the appellant's house or to the house of her brother, from the time of her husband's death up to the time of the beginning of this suit in February, 1902, and subsequently thereto. Charles Pittenger, her son, had not lived with his father and mother for a number of years, and had not visited the old home for a number of years until the death of his father, when he came to the latter's funeral. He had received, as the evidence shows, a considerable amount of money from his father during the latter's lifetime, but contributed nothing to his mother's support after his father's death. In the fall or winter of 1901, he came back and visited his mother; and the evidence tends strongly to show that the dissatisfaction, which she then began to show, was due to the influence of her son, Charles. She asked of the appellant that he give or lend to her son, Charles, the sum of $400.00, which he refused to do. In the recent case of *Huffman* v. *Sharer*, 191 Ill. 79, which was similar in many respects in its facts to the case at bar, this court said (p. 84): "The testimony of the plaintiff in error demonstrated that his mind has been greatly impaired by age and his memory and judgment much weakened, and his testimony, together with the other proofs in the case, fully warranted the finding of the master, which was approved by the court, that his present dissatisfaction with the terms of the conveyance was inspired by other interested parties who have ulterior designs to forward, which it is not to the best inter-

est of the plaintiff in error should be promoted." While all of this language may not be applicable to the facts of the present case, yet a portion of it is so applicable, that is to say, the dissatisfaction of the appellee, Julia A. Pittenger, with the contract, made by her son for her support, and with the execution of the deed, is shown by the testimony to have been inspired by interested parties, who had ulterior designs to promote.

While the evidence in this case does not show that there was any fraud or undue influence exercised over the grantors in procuring the execution of the deed here sought to be set aside at the time of the execution of the same, yet the doctrine, laid down in *McClelland* v. *McClelland*, 176 Ill. 83, and the cases therein referred to and commented upon, is invoked for the purpose of carrying back the testimony in regard to what occurred after the death of John Pittenger, Sr., and making it apply to the intention of the appellant at the time the deed was made. The doctrine thus sought to be invoked is that, where there is a failure to perform contracts of this kind, a court of equity will entertain jurisdiction to set aside a deed, upon the ground that the circumstances justify the inference of an abandonment of the contract, and a presumption of a fraudulent intent in entering into the contract. In other words, it is claimed by the appellees that the appellant failed to properly maintain and support his mother after the death of his father, and that his conduct in this regard gives rise to the presumption that he entered into the contract originally, and obtained the deed, with a fraudulent intent. We have no fault to find with this doctrine, which has been laid down by this court in a number of cases, but we fail to see that the appellant was guilty of any such conduct in this case as to justify the presumption that his original intention in obtaining the deed was fraudulent.

The testimony, upon which the court below based its decree, is principally that of the appellee, Julia A. Pit-

tenger, and her son, Charles, and a son or daughter of the latter.

The interest and bias of this testimony are apparent upon its face, while the testimony as to the fulfillment of the contract by the appellant comes from disinterested parties, and is of a convincing character. In the first place, while the contract does not specify that the appellant was obliged to secure and provide families or persons to reside with his mother in her home, yet the evidence shows that he did so, and that he paid them with his own money for their services in this respect. The evidence is too voluminous to justify us in analyzing and commenting upon all of it, but a few salient features may be noticed. For instance, from February 1, 1900, the time of the death of the appellant's father, up to and after February, 1902, when this suit was begun, there were only a few weeks when the appellant's mother was without company upon the home farm. In February, 1900, Laura Burchfield, a niece of Mrs. Pittenger, stayed with her until appellant could procure some one to go there, and was paid for so doing by the appellant. Elias Burton and his wife went to live with her in March, 1900, and stayed with her until September of the same year. Mrs. Pittenger then went to the appellant's home and remained there a while. Then in November one Rhodes and his wife came to her home and stayed with her until about March, 1901. Then one Christian and his wife stayed with her from March 1, 1901, until about September of the same year; then other parties, to-wit, Bertha Neff, and Charles Mitchell, and a son of appellant stayed with her at different times; then one Mrs. Amanda Kiger came and stayed with her until about New Year's day in 1902. During this time, also, one Hamilton Cole stayed there a month or so, and also Ida Pittenger, appellant's daughter, stayed there four weeks or over. After that, a man, named Pope, and his wife, came and stayed with her. All these persons were procured to attend upon

Mrs. Pittenger by her son, the appellant, and nearly all of them were paid by him to do so. Without further comment upon this branch of the testimony, it is sufficient to say that the appellant procured ten or twelve families or individual persons, not including his son and daughter, to stay with Mrs. Pittenger from February, 1900, until about October, 1902. After the beginning of this suit in February, 1902, she left the farm for a considerable time and lived with her brother or her nephews and nieces, and during all this time the appellant paid her board to the parties with whom she so lived.

The evidence also shows that, during the time when his mother remained on the farm, the appellant himself went there several times a week, and some member of his family was there almost every day, and he sent to his mother fresh milk and butter and provisions, and also sent her fuel and ice, and did all that he could to make her stay comfortable. The testimony, that she was well provided for, comes from neighbors and persons thus living with her, who can have no possible interest in this suit. Their testimony is overwhelmingly convincing to the effect that the appellant not only provided her with attendants or companionship, but provided her also with provisions and other necessaries of life. A few persons were put upon the stand, who stated that, at certain times when they took meals there, the bread would be stale or heavy, and at one time the well was broken, or there was some difficulty about getting water, but these were small matters and of minor importance. A slight or partial neglect on the part of one of the contracting parties to observe some of the terms or conditions of the contract will not justify the other party in abandoning or rescinding the same. A deed or contract, made in consideration of the support of the grantors, will only be set aside in equity where there has been an entire failure or refusal to perform the agreement, or at least such a substantial failure to perform the con-

tract in respect to material matters as would render the performance of the rest a thing different from what was contracted.   As was said in *Weintz* v. *Hafner*, 78 Ill. 27: "Appellee had no right to rescind the contract and recover the purchase money paid, unless appellant had failed, in a substantial manner, to observe his part of the contract.   A slight or partial neglect on the part of one of the parties to a contract to observe some of the terms or conditions thereof, will not justify the other party to at once abandon the agreement.   As was said in *Selby* v. *Hutchinson*, 4 Gilm. 319, in order to justify an abandonment of the contract, and of the proper remedy growing out of it, the failure of the opposite party must be a total one.   The object of the contract must have been defeated or rendered unattainable by his misconduct or default. .  For partial derelictions and non-compliances in matters not necessarily of first importance to the accomplishment of the object of the contract, the party injured must still seek his remedy upon the stipulations of the contract itself." (See also *Leopold* v. *Salkey*, 89 Ill. 412; *City of Elgin* v. *Joslyn*, 136 id. 525.)   We think that, under the evidence here, an effort was made by the appellant in good faith to effect a substantial compliance with the agreement and that such effort was successful. The evidence tends to show that Mrs. Pittenger, who was an old lady upwards of eighty years of age at the time when most of these transactions occurred, would become dissatisfied with persons living with her, so that they were obliged to leave.   Many of her complaints, which seemingly reflected upon the conduct of the appellant, were, as matter of fact, due to the whims and fancies of old age, and a feeling of loneliness natural to her after the death of her husband.   She declined appellant's offer to take her to his home, and to give her the best room in his house, if she desired it.   But when she remained in her own home, or went elsewhere, she was always supported by the appellant at his own ex-

pense, and, as we read the testimony, adequately and comfortably. In addition to this, there is abundance of testimony in the record proving declarations which were made by the appellee, Julia A. Pittenger, as to the appellant's kindness to her. Before she fell under the influence of her son, Charles, she frequently stated to other people—who so testify—that the appellant had done all for her comfort, which she could ask, and furnished her with all the necessaries, which she required.

*Second*—The second ground, upon which the failure to keep his contract is charged against the appellant, is that he neglected to pay the $100.00 per year, which the original contract required him to pay. In explanation of this matter the appellant introduced the evidence set forth in the statement preceding this opinion, which shows that the original contract was subsequently changed and modified by leaving out the provision requiring the payment of the $100.00 per year. The letter, directing that the contract be changed in this regard, was signed by John Pittenger, Sr., and Julia A. Pittenger, his wife. There is not a particle of evidence to show that the letter was not signed voluntarily by John Pittenger, Sr. Mrs. Pittenger admits that she signed the letter, and that she did it at the request of her husband, who had already put his signature to the letter before he asked her to do so. The reason, given in the letter for relieving appellant from the necessity of paying this $100.00, is that it was not needed by his father and mother. The proof shows that he gave his mother money from time to time, and the testimony of persons, who lived with her shows that they were authorized by the appellant to make purchases for her, requiring money and subsequently paid for by him. Mrs. Pittenger states in her testimony that, when she signed the letter consenting to the modification of the contract in the respect named, she did not know that the provision regarding the $100.00 was to be left out. There is, however, a considerable

amount of testimony in the record by outside parties to the effect, that she stated to them at different times that the appellant was relieved from the necessity of paying this $100.00, because she and her husband did not need it.    Her testimony upon this subject is weakened by the evidence of witnesses, who swear to her declarations to the contrary of what she testifies to,  A duplicate of the contract of October, 1899, was within her control, or within the control of some of the appellees here acting with her, for more than two years after the death of John Pittenger, Sr., and, if any fraud had been practiced in modifying the original contract by leaving out the provision in regard to the $100.00, it is singular that the silence of the second contract upon this subject was not noticed.    It would seem natural that the omission of the $100.00 from the modified contract would have been noticed during this long period, if there had been any fraud in procuring the modification of the contract.    Mrs. Pittenger's name having been signed to the letter, consenting to the change in the contract, it requires clear and conclusive testimony to show that she was deceived, or imposed upon in any way, when she so signed the letter in view of the fact that her husband signed it at the same time, and requested her to sign it.

*Third*—Some stress is laid by the appellees upon the fact that certain issues in this case were submitted to the jury, and that the answers, returned by the jury to the questions propounded to them, were in favor of the appellees, and against the appellant upon the points here involved.    In reply to this it is sufficient to say that, where a chancellor submits controverted questions of fact to a jury, the verdict or finding of the jury is advisory merely.    He may adopt the verdict, or set the same aside, and re-submit the question to the jury, or he may disregard it, and enter such a decree as in his judgment equity demands.    "He may enter his decree after setting the verdict aside, or without setting it aside."

(*Guild* v. *Hull*, 127 Ill. 523).    We think that some of the instructions, which were given to the jury by the court, were misleading and erroneous, but inasmuch as the verdict was advisory merely, and not binding upon the chancellor, the error in this regard is unimportant in determining the correctness of the decree, which was finally rendered.  It will be presumed that the court disregarded irrelevant evidence, and predicated the findings upon legal admissible evidence.    Notwithstanding the fact that there was here a submission of certain questions to be determined by the jury, we yet think that the only material question to be considered by us is, whether the decree, rendered by the court, is sustained by the evidence; that is, by the legal testimony, such as is admissible under the established rules of evidence. (*Peabody* v. *Kendall*, 145 Ill. 519).    The final decree shows that it was based not only upon a consideration by the chancellor of the evidence, but also upon a consideration of the finding made by the jury; and it may be that the chancellor did not rely as completely upon his own interpretation of the evidence, as he would have done, if there had been no action on the part of the jury.  But in view of the character of the testimony in this case we cannot resist the conclusion, that the jury were carried away by sympathy for this old lady, as they rendered a verdict which is contrary to the weight of the evidence. In our opinion the decree of the court is not sustained by the proof.

Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court with directions to dismiss the bill.

*Reversed and remanded.*