ROBERT E. MUSGRAVE, Appellant, *v.* JOHN JAY CASEY, and MYRTLE CASEY, His Wife, Respondents.

No. 3626

September 26, 1951.                                    235 P.2d 729.

*Royal A. Stewart,* of Reno, for Appellant.

*John R. Ross,* of Carson City, and *Andrew L. Haight,* of Fallon, for Respondents.

## OPINION

By the Court, EATHER, J.

This suit was brought to establish a joint adventure in the purchase of a ranch, to establish in plaintiff an undivided one-half interest in the ranch property, and for the winding up of the joint adventure. The complaint alleges the existence of a joint adventure between the parties and the prayer of the complaint reads as follows:

"Wherefore, plaintiff prays for a decree of this court conveying to the plaintiff an undivided one-half interest in and to the property described in Exhibit "A," attached hereto, and that one-half of the proceeds thereof in excess of the sum necessary to pay the purchase price of said ranch be adjudged to the plaintiff and that plaintiff be adjudged to be the owner of one-half of the cattle and personal property remaining; that a receiver be appointed to take charge of said monies and property pending a final determination of this cause and that said partnership and joint adventure be wound up and terminated and that plaintiff have judgment for costs of suit and for such other and further relief as to the Court seems just and proper."

The answer of the defendants denies the existence of

a joint adventure and asserts as counterclaim that plaintiff had failed to account to defendants for proceeds of sale of certain horses belonging to defendants and prays that plaintiff be required to account therefor and that defendants have judgment for the amount found due.

The assignments of error relate in major part to the procedure followed before the trial court. The principal question relates to the right of the trial court to render judgment for the defendants contrary to the verdict of the jury. We therefore address ourselves first to the matters of procedure.

For the purpose of clarity, appellant will be referred to as the plaintiff, and respondents as defendants.

On setting for trial a jury was demanded by plaintiff. By court order the matter was set for trial "before a jury." After trial the matter went to the jury for a general verdict upon the court's instructions as to the applicable law. In instructing the jury the court stated in part "* * * It is your exclusive province to determine the facts of the case, and to consider and weigh the evidence for that purpose. * * * The Court is not to decide or to determine these issues or questions of fact because this is not the province of the Court but is the exclusive province of the jury. * * *."

The verdict of the jury was as follows: "We, the jury in the above-entitled case do find for the plaintiff, Robert E. Musgrave." This verdict was rendered December 1, 1949.

On December 7, 1949, and prior to the entry of judgment, defendants filed a notice of motion "for judgment in favor of the defendants and against the plaintiff, notwithstanding the verdict of the jury." On the same day defendants filed notice of intention to move for a new trial.

On December 13, 1949, both of defendants' motions came on for hearing before the court. The court did not specifically rule on defendants' motion for judgment notwithstanding the verdict, but stated as follows: "You may enter the order, Mr. Clerk, that it is the judgment

of the court that the defendants in this action prevail and that they have judgment and for their costs and disbursements incurred."

No action was taken upon defendants' motion for a new trial. The court instructed counsel for defendants to prepare findings. On December 19, 1949, plaintiff filed notice of intention to move for a new trial and on February 14, 1950, that motion was argued and denied. Findings of fact and conclusions of law in favor of defendants were signed by the trial judge February 14, 1950. On the same date, judgment in favor of defendants was signed and said judgment was filed March 22, 1950. This appeal is from the judgment of the trial court and its order denying new trial.

The principal question involved in this appeal, that of the right of the trial court to disregard the jury's verdict and enter judgment for defendants, depends upon the nature of the litigation, either as an action at law or as a suit in equity. It is elemental that in a suit in equity the judgment or decree must be based upon findings of the court rather than a jury verdict; that the determinations of the jury are purely advisory. It is apparent from the prayer of the complaint that, at the very least, equitable features are present. Appellant contends that regardless of the equitable nature of the relief sought, the essential issue of the existence of a joint adventure was legal in character, and likewise the counterclaim of the defendants, and that the verdict of the jury was therefore binding on both matters.

It has been held by this court that where a case partakes of both legal and equitable issues and no segregation of such issues is made in presenting the case to the jury, and where the case is treated throughout as a proceeding in equity, the verdict of the jury must be regarded in its entirety as advisory and the right of the court to pass upon the legal as well as the equitable issues cannot be questioned upon appeal. Costello v.

Scott, 30 Nev. 43, 93 P. 1, 94 P. 222, Johnston v. DeLay, 63 Nev. 1, 158 P.2d 547.

Appellant contends that the converse of this proposition should apply as laid down by this court in Van Vleet v. Olin, 4 Nev. 95, 34 P. St.Rep. 95. There this court stated (holding that the trial court had erred in instructing the jury):

"But it may be claimed that this is purely an equity case, and, therefore, that the refusal to give a correct instruction asked, or a misdirection of the jury, is not an error which will authorize the reversal of the judgment, because a court of equity is not bound or controlled by the verdict in such case. We are inclined to believe that the parties could, as a matter of right, have claimed a jury to try their title to the premises in this case. But whether they could or not, the Court below treated the case all through as an ordinary action at law, and charged the jury that they were the exclusive judges of the facts, of the credibility of the witnesses, and of the weight of evidence. In rendering judgment, also, it seemed to consider itself bound and controlled by the verdict of the jury as in an action at law. When the whole case is in such manner submitted to the jury, and the Court considers itself controlled by the verdict, certainly each party has the same rights with respect to instructions that he has in any trial at law."

Further, appellant contends that the Costello case is distinguishable in that the recognition of the proceedings by the parties as an equitable one was there clear and consistent throughout the trial; that the case was set down for trial "by the court with the aid of a jury"; that the case went to the jury upon special issues indicating clearly that the jury was acting in an advisory capacity only; that in the case at bar the case in all regards was treated as one at law and not as one in equity.

It must be conceded that from the procedural history of this case as we have outlined it and from the manner

in which the jury was utilized, this case bears resemblance rather to an action at law than a suit in equity.

The record establishes without doubt, however, that procedure notwithstanding, it was the clear understanding of the court and of counsel that the nature of the case was equitable and that the verdict of the jury was purely advisory in character. Upon the conclusion of the taking of testimony the following exchange took place between the court and counsel as reported at length in the transcript of proceedings:

"Mr. Ross: (Attorney for defendants) Here is something we discussed in Chambers that comes to my mind. I am somewhat worried about it. I am speaking now of the mechanics of court procedure. Your Honor has overruled the motion for a nonsuit and the motion for a directed verdict. The matter now goes to the jury. Now the Court, in a matter of equity has the right to take the verdict of the jury as advisory. In a matter of law it's the final determination of the case. Now I am confused and I would say frankly at this moment, what is the legal nature of this pleading? Are we going to be bound as a matter of law by the verdict or is it going to be advisory on the theory that this is an equitable action?

"Court: The Court's position is that the verdict of the jury is only advisory to the Court in this proceeding. Is that correct, Mr. Stewart? Is that your position?

"Mr. Stewart: (Attorney for plaintiff) I believe it is correct in that respect, Your Honor. It is an equitable action and in an equitable action the jury's verdict is advisory. That is my understanding, at least.

"Court: The Court takes the position it is a case in equity by nature of the plaintiff's complaint and the jury's verdict is advisory only. We will be in recess until one-thirty."

Immediately following the court recess the court entertained objections to instructions and proceeded forthwith to instruct the jury, including in its instructions those already quoted relative to the jury's function with

reference to the issues of fact. Does the fact that such instructions were given and that the jury was asked for a general verdict rather than for special findings in aid of the court, transform the character of the proceeding from an equitable one upon which all parties were agreed, to one at law? If so, it must be said that without further discussion between court and counsel the understanding which they had reached prior to the noon recess, for some reason not appearing in the record, had been abrogated and set aside. Such a conclusion simply does not appear to be reasonable. Furthermore, such a conclusion is expressly negatived by the record itself.

Upon hearing of defendants' motion for judgment notwithstanding the verdict, the following statements were made by respective counsel:

"Mr. Ross: (Attorney for defendants) We submit, if the court please, from where we stand that the proper procedure in this case would be to enter a judgment notwithstanding the verdict; that the case is one of equity; the verdict in the first instance was only advisory. Counsel seems to question whether or not this might be an equitable case now but I recall before we went to the jury he was very definite it was an equitable case, and he agreed with the Court's statement that the verdict in any event would only be advisory.

"Mr. Stewart: (Attorney for plaintiff) In view of counsel's last statement I would like to make this statement to the Court. It is true that I thought it was an equity case and I still think it is. In other words, the relief asked for is equitable in its nature but I am not quite so sure at the present time as I was then that there may be law questions mixed up in equity. Since reading some of the Nevada cases and seeing where one case may involve questions of law and equity I am not quite so certain, although I have never argued here today that this was a law case. I have assumed at all times in my argument that it was an equity case. * * *"

It is therefore clear that even after submission of the

matter to the jury and the rendition of its verdict by the jury counsel were still in agreement that the matter was equitable. Any doubts that may have assailed appellant's counsel relative to the existence of legal issues and appellant's right to stand upon the jury's verdict in those respects, occurred to counsel after the rendition of the verdict.

The case of Wessell v. Rathjohn, 89 N.C. 377, deals with a situation converse to that appearing here, the court holding that where parties choose to proceed as at law they may not thereafter "without the common consent of all the parties and the assent of the court, change the method of procedure to that of the court of equity * * *." Certain language of the court is, however, as appropriate under the circumstances of this case as under the facts with which that court was concerned. The court stated:

"It does not comport with the propriety, fairness, and integrity of judicial proceedings to allow litigants to test their fortune in one competent jurisdiction, under one method of procedure, and, failing in that, to try another method before the same tribunal. Leggett v. Leggett, 88 N.C. 108; Shields v. Whitaker, 82 N.C. 516."

It cannot be said that either counsel or court in submitting the matter to the jury had departed from the understanding previously reached that the jury verdict was to be advisory only. The only fair conclusion therefore, would appear to be that the procedure followed may be reconciled with the understanding of all parties on the basis that the parties rejected the customary manner of utilizing the jury in an advisory capacity through special findings and chose instead to utilize the jury through an advisory verdict general in nature. We therefore regard the decisions in Costello v. Scott, supra, and Johnston v. DeLay, supra, as controlling. It would follow that the general verdict of the jury may be rejected by the court in its discretion to the same extent that special findings might have been rejected.

Appellant asserts that the trial court erred in granting defendants' motion for judgment notwithstanding the verdict upon the ground that such a motion is not available to a defendant since by its nature it is a plaintiff's motion, citing as authority Brown v. Lillie, 6 Nev. 177. In the light of our view that the jury verdict was advisory only, this argument does not apply. No motion at all was required to enable the court in its discretion to reject the jury's verdict. The "motion" may be regarded simply as a method of suggesting to the court that its findings favor the defendant and reject the jury's verdict. The trial court apparently so regarded the motion since no order was made expressly granting it.

Appellant asserts that the trial court erred in instructing the jury in certain respects. In the light of our view that the verdict was advisory, any error which may have been thus committed was harmless. White v. Morrow, 187 Okl. 72, 100 P.2d 872; Pittenger v. Pittenger, 208 Ill. 582, 70 N.E. 699; Sweetzer v. Dobbins, 65 Cal. 529, 4 P. 540; Wetzstein v. Largey, 27 Mont. 212, 70 P. 717.

Finally appellant contends that the findings and judgment of the trial court are "contrary to the law and the great weight of evidence." In this respect a summary of the facts upon which suit was brought becomes necessary.

Plaintiff was the owner and operator of the Valley Livestock Sales Yard at Fallon, Nevada. His business was that of a livestock auctioneer through his sales yard for commission. Defendant John Casey (and in this statement of the facts we refer to him as the defendant, omitting reference to his co-defendant wife) was a rancher and cattleman and prior to the transactions with which this case is concerned owned and operated two ranches, the Fallon or Home Ranch and the Reese River Ranch.

These parties had known each other as friends and

business associates for many years, plaintiff frequently acting for defendant in the sale of defendant's cattle. Also they had from time to time engaged in joint speculations in the purchase of cattle which were then sold through the sales yard with net profits equally divided. In 1948 they were engaged jointly in such a speculation.

In the fall of 1947 it became generally known that the Butler Ranch to the south of defendant's Reese River Ranch was to be offered for sale by the First National Bank of Nevada as executor of the Butler estate. Defendant conducted a private investigation of the ranch assets. It was a desert ranch including not only land holdings but range rights over a very extensive area of public domain. The number of cattle spread over this extensive area was the great unknown factor in the question of value and defendant's private investigation was largely along the lines of an estimated cattle count backed by his years of experience in this regard. Many trips over the ranch property were taken and much time was spent by defendant in gaining his information relative to the ranch assets.

On May 7, 1948, based upon information so gained, defendant offered to purchase the entire ranch property with all livestock and equipment for $325,000, payable as follows: $1,000 deposit with bid, $49,000 down payment if the bid received court approval, $275,000 balance to be paid at the rate of $55,000 per annum with interest at 4½ percent and to be covered by a deed of trust and chattel mortgage, with all proceeds of sale of Butler Ranch cattle to be applied on the unpaid purchase price.

Defendant had discussed the matter of the purchase of the Butler Ranch with the plaintiff and at about the time the bid was made the parties had a conversation on the subject in plaintiff's office. According to plaintiff defendant stated that he would like to have a partner in the deal and the following conversation ensued:

"Plaintiff: Well, just what will it take to be your partner?

"Defendant: One-half of what it costs.
"Plaintiff: Don't put that out unless you mean it.
"Defendant: I am not.
"Plaintiff: Let's get together."

Defendant admits that such a conversation was had but testified that he had stated that it would take $25,000 (one-half the down payment) to become a partner and that plaintiff had asked for two weeks within which to decide. Defendant also testified that plaintiff later had asked if he would accept a one-half interest in the sales yard in lieu of the $25,000, but that this was never accepted.

Plaintiff testified that following the conversation quoted, he at all times assumed that he was a partner and obligated to the extent of one-half of the risk involved; that until payment of the purchase price had been substantially completed defendant had treated him in all respects as a partner; that on the occasion of the court confirmation, defendant, being concerned lest his installment bid would be rejected in favor of a cash bid of $300,000 by another party, had asked plaintiff to be present in court prepared in his own name to overbid the cash bid; that plaintiff had been so present and so prepared with $1,000 of his own money available as a deposit; that plaintiff's services in connection with raising the purchase price were extensive; that he had made many trips to the ranch, had secured a purchaser who had paid to defendant $50,000 for certain of defendant's cattle for future delivery, which sum was utilized as the down payment; that plaintiff had conducted a cattle roundup on the Butler Ranch and an auction sale of cattle which had raised a little over $78,000; that he had arranged a further private sale of Butler cattle for $159,803.19.

Independent witnesses testified that defendant had treated plaintiff as though plaintiff had an interest in the ranch.

The trial court in rendering its opinion in favor of the defendant stated the conviction that there was not

sufficient evidence to establish that there ever was a partnership or joint adventure created between the parties. This appears to us to be the true issue. The question is not whether plaintiff is entitled to compensation for his services rendered in connection with the raising of the purchase price. The question is whether any contract ever was reached which created a joint adventure. Plaintiff's position is that such a contract was created and that it was created by the conversation in the sales yard as we have quoted it.

In our view the opinion of the trial court that a joint adventure was not established must be affirmed. We do not find it reasonably possible to construe the conversation in question, even accepting plaintiff's version of it, as creating a binding contract. The words "Let's get together" cannot, we feel, be interpreted as a present and immediate assumption of risk and an irrevocable promise to contribute to the extent of one-half of the down payment. The conversation at most would appear to be an offer only and an offer which demanded acceptance by action (through payment) rather than by promise. If there was such an offer it was never accepted. The down payment of $50,000 was not jointly borne but was raised by sale of defendant's own cattle. The fact that such a sale was for future delivery and, as a matter of hindsight considering the manner in which the transaction developed, might have been fulfilled out of Butler cattle, does not affect the legal aspect of the matter. The down payment actually was raised by defendant without financial contribution or assumption of risk by the plaintiff.

The trial court is affirmed in its holding as to the complaint of the plaintiff.

Defendant, as a counterclaim, alleged that defendant had delivered into plaintiff's possession some 200 head of horses to be disposed of by plaintiff; that plaintiff thereafter sold the horses for the approximate sum of $3,000 but had never accounted therefor to defendant.

The trial court upon this counterclaim rendered judgment in favor of defendant in the sum of $3,000.

The evidence establishes, however, that the agreement of the parties was that plaintiff was to round up wild horses on the Butler Ranch and dispose of them; that the parties were to divide the gross sales proceeds equally; that plaintiff in disposing of the horses had received a total of $3,412.15. Under these established facts, defendant at most would have been entitled to judgment in the sum of $1,706.07.

It is ordered that the judgment of the trial court be modified by reduction of the judgment upon defendants' counterclaim from $3,000 to the sum of $1,706.07; that as so modified the judgment of the trial court is affirmed. The respective parties shall bear their own costs upon this appeal.

BADT, C. J., and MERRILL, J., concur.

### ON PETITION FOR REHEARING

November 15, 1951.

*Per Curiam:*

**Rehearing denied.**