YEHIA AWADA, an Individual; AND GAMING ENTERTAINMENT, INC., a Nevada Corporation, Appellants, v. SHUFFLE MASTER, INC., a Minnesota Corporation; and MARK YOSELOFF, an Individual, Respondents.

No. 46174

December 27, 2007                                    173 P.3d 707

*Morris & Sullivan* and *Will A. Lemkul*, North Las Vegas, for Appellants.

*Jones Vargas* and *Kirk B. Lenhard, Scott M. Schoenwald*, and *Tamara Beatty Peterson*, Las Vegas, for Respondents.

Before the Court EN BANC.[1]

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we consider the primary issue of whether a district court has the authority to bifurcate the legal and equitable claims presented in a single action, conduct a bench trial on an equitable claim, and then use the findings of fact and conclusions of law from that bench trial to dispose of the case. On this issue of first impression, we conclude that Nevada district courts have discretion to bifurcate legal and equitable claims in a single action and to first conduct a bench trial on an equitable claim. Furthermore, a district court that exercises such discretion may then use its findings of fact and conclusions of law as a basis for disposing of claims remaining in the case, so long as it does so in a manner consistent with Nevada law and our rules of civil procedure.

We also consider whether the district court abused its discretion by sua sponte disposing of the remaining claims in a summary judgment-like manner after conducting a bench trial on respondents' counterclaim for rescission. In this case, the district court did not abuse its discretion when it first considered respondents' counterclaim for rescission and rescinded the parties' agreement. Based on its findings and conclusions, the district court properly disposed of all of appellants' contract-based claims against respondent Shuffle Master, Inc., because those claims could not stand absent a valid contract. However, the district court improperly granted summary judgment as to the claims against respondent Mark Yoseloff and appellants' remaining claims against Shuffle Master because those claims can survive absent a valid contract between the parties. Additionally, the district court erred in resolving those claims without satisfying the procedural requirements of NRCP 56.

Accordingly, we affirm the district court's judgment as to appellants' claims for breach of contract and contract-based claims for breach of the implied covenant of good faith and fair dealing; we reverse the district court's judgment as to appellants' claims for

---

[1]THE HONORABLE RON PARRAGUIRRE, Justice, voluntarily recused himself from participation in the decision of this matter.

fraud, civil conspiracy, conversion, unjust enrichment, and tortious interference with contractual relations/prospective economic advantage and as to appellants' claims against Yoseloff; and we remand this case to the district court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Appellant Yehia Awada is a casino game developer who, through his company, appellant Gaming Entertainment, Inc. (GEI) (collectively referred to as Awada), develops and distributes games for the gaming industry. One of Awada's games, titled 3 Way Action (the game), combines the card games war, blackjack, and poker. After the Nevada Gaming Control Board approved the game, Awada applied for and received a patent in November 1999. He had previously registered the name 3 Way Action as his trademark.

After failing to successfully market the game on his own, Awada entered into an agreement with Shuffle Master, a manufacturer and distributor of casino games and equipment. Under the agreement, Awada became Shuffle Master's employee for a six-month period, during which his primary responsibility was to promote the game under Shuffle Master's direction. Awada also gave Shuffle Master "all of the rights including all intellectual property rights," as well as control and the exclusive right to promote and test-market the game during his six-month employment period. He further gave Shuffle Master the option to purchase, for a set price, an exclusive license for all rights to the game. The agreement required Shuffle Master to exercise its option, if at all, during the month of July 2000. In the agreement, Awada represented and warranted that he and GEI were the "sole owners of 3 Way Action . . . and all intellectual property related thereto free and clear of any claims by third parties."

Shuffle Master, in turn, promised to pay Awada for executing the agreement and give him a salary, plus benefits, for the term of his employment. Shuffle Master prepared the agreement, which the parties executed on December 28, 1999.

Shuffle Master later discovered that before signing the agreement, Awada had given International Game Technology, Inc. (IGT), the right to use the name and trademark 3 Way Action for its unrelated video poker game. Awada's agreement with IGT forced Shuffle Master to enter into a separate agreement with IGT in order to use the name 3 Way Action for its table game. However, Awada's agreement with IGT prevented Shuffle Master from developing a video version of the game using that title because it would infringe on IGT's rights to the 3 Way Action trademark.[2]

---

[2]Shuffle Master is also concerned that casino patrons would be confused if its table game and IGT's video poker game both used the name 3 Way Action.

Shuffle Master did not exercise its option to buy an exclusive license to the game within the required six-month period. Each party blames the other for that breakdown. When the parties failed to resolve their differences, Shuffle Master informed Awada, by letter, that it was rescinding the agreement and ending their relationship. After some delay, Shuffle Master returned to Awada all of the 3 Way Action assets in its possession. Shuffle Master then began developing a similar game under the name Triple Shot.

Awada subsequently filed a complaint against Shuffle Master and its chief executive officer, Yoseloff, in September 2002, alleging breach of contract, fraud, civil conspiracy, tortious interference with contractual relations/prospective economic advantage, breach of the implied covenant of good faith and fair dealing, conversion, and unjust enrichment. Awada also sought an accounting of profits and injunctive relief. Shuffle Master answered, asserting numerous affirmative defenses and counterclaims, seeking, among other things, rescission of the agreement on the grounds that Awada fraudulently induced it into signing the agreement and that Awada failed to perform under the agreement.

Initially, Shuffle Master moved for summary judgment, which the district court denied. However, the district court subsequently bifurcated Shuffle Master's request for rescission from the parties' other claims and conducted a bench trial only on Shuffle Master's counterclaim for rescission.

During the bench trial, several Shuffle Master employees testified that Awada initiated the relationship with Shuffle Master by approaching them and proposing the agreement with Shuffle Master. Those witnesses testified that Awada failed to fully disclose the true nature of his agreement with IGT before entering into the agreement with Shuffle Master. The district court also heard testimony concerning Awada's actions at the end of the six-month option period and Awada's intentional delays and rejection of Shuffle Master's option payment until after the six-month option period had ended. The district court also admitted into evidence correspondence from Shuffle Master to Awada indicating that it intended to exercise its option and attempted to extend the option deadline after Awada prevented Shuffle Master from exercising its option in a timely manner. At the conclusion of the bench trial, the district court found in favor of Shuffle Master and rescinded the agreement between Awada and Shuffle Master. In its findings of fact and conclusions of law, the district court detailed the portions of the evidence it found relevant and credible.

After conducting the bench trial and ordering the agreement rescinded, the district court attempted to settle the remaining claims. During that time period, the district court requested ''letter briefs'' from the parties addressing the impact of its findings and conclusions, entered as a result of the bench trial, on the remainder of the

parties' claims. During a subsequent status check, the district court "[directed] the parties to quit wasting their time" and advised the parties that its findings of fact and conclusions of law from the bench trial disposed of all of the remaining claims in the case. Consequently, the district court entered a written order dismissing Awada's remaining claims, with prejudice, and holding that its prior order constituted a final judgment. Awada subsequently moved the district court to amend its findings of fact and conclusions of law and for a new trial. The district court denied the motion.

Awada now appeals the district court's order rescinding the agreement and dismissing his claims. He also appeals the district court's order denying his motion for a new trial. Awada argues that the district court violated his right to a jury trial by bifurcating Shuffle Master's counterclaim for rescission, conducting a bench trial related only to that equitable remedy, and using its findings of fact and conclusions of law from the bench trial to dispose of all his remaining claims, sua sponte, without a motion or a trial. He further argues that the district court's findings are unsupported by substantial evidence.

## DISCUSSION

### Awada's request for a jury trial

NRCP 42(b) generally provides the district court with discretion to separate "any claim, cross-claim, counterclaim, or third-party claim" and to conduct a separate trial thereon, so long as it "always preserv[es] inviolate the [constitutional] right of trial by jury." However, because the right to a jury trial does not extend to equitable matters,[3] the question presented is whether the jury trial right is preserved when a district court exercises its discretion to consider a case's equitable claims first and, based on its conclusions with respect to those issues, necessarily disposes of the case before proceeding to a jury trial on the case's legal issues.

Constitutional issues, such as one's right to a jury trial, present questions of law that we review de novo.[4] As regards the jury trial right, Nevada's Constitution provides that "[t]he right of trial by Jury shall be secured to all and remain inviolate forever."[5] We

---

[3]See, e.g., *Harmon v. Tanner Motor Tours*, 79 Nev. 4, 20, 377 P.2d 622, 630 (1963) (concluding that where the complaint solely sought equitable relief, there is no right to a jury trial); *Musgrave v. Casey*, 68 Nev. 471, 474, 235 P.2d 729, 731 (1951) ("It is elemental that in a suit in equity the judgment or decree must be based upon findings of the court rather than a jury verdict . . . .").

[4]See *Callie v. Bowling*, 123 Nev. 181, 183, 160 P.3d 878, 879 (2007).

[5]Nev. Const. art. 1, § 3.

recently have explained that the Nevada Constitution's framers' use of the phrase "shall . . . remain inviolate forever," indicates their intent to perpetuate the jury trial right as they understood it in 1864, when they adopted Nevada's Constitution.[6] Thus, Nevada's jury trial right is defined by English common law—the antecedent of this country's jurisprudence—as modified at the time of the Nevada Constitution's adoption.[7]

Because we examine Nevada's jury trial right in light of the 1864 version of the English common law as modified in this country,[8] California law in existence in 1864 is relevant to our analysis.[9] When the framers adopted Nevada's Constitution, California's jury trial right did not impede a court's discretion to address the equitable issues raised in an action before addressing the legal issues raised.[10] Moreover, a California case recognizing that state's early understanding of the jury trial right recognized that a court's resolution of the equitable issues an action raised may obviate the need to proceed to a jury trial on any legal issues.[11] Indeed, California's understanding of its jury trial right at the time that Nevada's Constitution was adopted is now considered a "well established" understanding of that right.[12]

Similarly, Iowa, Wisconsin, and Ohio law in existence in 1864 recognized that the "inviolate" jury trial right[13] does not impede

[6]*Aftercare of Clark County v. Justice Ct.*, 120 Nev. 1, 6, 82 P.3d 931, 933 (2004); *Cheung v. Dist. Ct.*, 121 Nev. 867, 870, 124 P.3d 550, 553 (2005).

[7]*See Aftercare*, 120 Nev. at 6, 82 P.3d at 933.

[8]*Id.*

[9]*See* Cal. Const. art. 1, § 16 (stating that the right to a "trial by jury is an inviolate right").

[10]*Lestrade v. Barth*, 19 Cal. 660, 671 (1862) (recognizing that a court may first resolve the equitable issues raised in an action and that the court's determination of those issues may dictate the necessity of "proceeding with the action at law"); *Estrada v. Murphy*, 19 Cal. 248, 272-73 (1861) (same); *Arguello v. Edinger*, 10 Cal. 150, 160 (1858) (recognizing that after a court resolved a party's request for equitable relief, it could determine, based on its decision, whether to proceed to a jury trial).
Indeed, only a few years after the California Supreme Court's decision in *Lestrade*, Justice Johnson of the Nevada Supreme Court cited it to support the conclusion that a court's resolution of an action's equitable issues may "enjoin the further prosecution of the action." *Rose v. Treadway*, 4 Nev. 455, 460 (1869) (JOHNSON, J., concurring).

[11]*Swasey v. Adair*, 25 P. 1119, 1119 (Cal. 1891) (recognizing that "*the proper rule of procedure for the court is* to" resolve equitable claims before addressing any legal claims, and providing that "[i]t may happen in many cases that the result of the trial of the equitable [claims] will obviate the necessity of a trial of the legal issues").

[12]*Raedeke v. Gibraltar Savings and Loan Association*, 517 P.2d 1157, 1160 (Cal. 1974).

[13]*See* Iowa Const. art. 1, § 9; Ohio Const. art. 1, § 5; Wis. Const. art. 1, § 5.

a court's discretion to first proceed with a case's equitable issues, even if its resolution of those issues disposes of the case at law. For instance, in 1864, the Iowa Supreme Court discussed Iowa statutes at that time and stated that the "appropriate practice" when a defendant raises equitable issues is first to address the equitable issues and, if those issues are resolved in the defendant's favor, to "dispose[ ] of the case at law."[14] Several years later, the Iowa Supreme Court relied on the discussion in that case to clarify that a court should first proceed with a case's equitable issues "when the trial of the equitable issue[s] in a certain event would dispose of the case."[15]

Likewise, in 1863, the Wisconsin Supreme Court recognized a court's discretion first to resolve a case's equitable issues before allowing, if necessary, a jury to consider any legal claims.[16] The case concerned a contract action in which the plaintiff sought legal and equitable relief.[17] The Wisconsin Supreme Court noted that "[t]he correct practice in such cases no doubt is to try the equitable cause first, and afterwards the legal."[18] The court further acknowledged that, after the trial judge resolves the equitable issues, a jury trial on the legal issues may become unnecessary.[19]

In *Sheeful v. Murty*, the Ohio Supreme Court considered the "inviolate" jury trial right provided by Ohio's 1851 Constitution.[20] In *Sheeful*, as in this case, the defendant asserted an equitable defense to the allegations in the plaintiff's complaint.[21] After granting the defendant the equitable relief that he sought, the trial court concluded that a jury trial on the legal issues that the plaintiff raised was unnecessary and disposed of the case.[22] In reviewing the case, the Ohio Supreme Court approvingly noted that when the trial court granted the defendant the equitable relief that he sought, it necessarily disposed of the case's legal issues and the legal issues therefore were "not triable by a jury."[23] Consistent

---

[14]*Van Orman v. Spafford, Clarke & Co.*, 16 Iowa 186, 190 (1864).

[15]*Morris v. Merritt*, 3 N.W. 504, 509 (Iowa 1879).

[16]*Harrison, et al. v. The Juneau Bank*, 17 Wis. 340, 350-51 (1863).

[17]*Id.* at 350.

[18]*Id.* at 351.

[19]*Id.* (recognizing a trial judge's discretion to proceed first with a case's equitable issues, "leaving the issue at law to the jury in case a verdict at their hands became necessary").

[20]30 Ohio St. 50 (1876); *see also* Ohio Const. art. 1, § 5 (providing that "[t]he right of trial by jury shall be inviolate").

[21]30 Ohio St. at 50.

[22]*Id.* at 52.

[23]*Id.*

with that principle, the Ohio Supreme Court recently acknowledged that, while the jury trial right is a "sacred and fundamental right," it is not guaranteed in all controversies, but preserved only as it existed when Ohio's constitutional framers adopted it.[24]

Based on this sample of cases, the jury trial right, as it existed in 1864, did not impede a court's discretion to address the equitable issues an action raised before allowing a jury to address the action's legal issues, if necessary. As these states' description of their "inviolate" jury trial right when the framers adopted Nevada's Constitution informs our understanding of Nevada's jury trial right,[25] we conclude that Nevada's jury trial right similarly does not require the district court always to proceed first with any legal issues.

In this case, Awada asserted in his complaint a combination of legal and equitable claims. In response, Shuffle Master sought equitable relief in the form of rescission. When the district court bifurcated the claims in this case, conducted a bench trial on Shuffle Master's counterclaim for rescission, and used its findings of fact and conclusions of law to dispose of Awada's contract-based claims, it did so without abusing its discretion.[26]

---

[24]*Shimko v. Lobe*, 813 N.E.2d 669, 675 (Ohio 2004).

[25]*See Aftercare of Clark County v. Justice Ct.*, 120 Nev. 1, 6, 82 P.3d 931, 933 (2004).

As noted, NRCP 42(b) provides that in exercising this discretion, courts should "always preserv[e] inviolate the right of trial by jury." Because Nevada's jury trial right does not require that the district court always proceed first with the legal issues, the jury trial right is preserved.

[26]We note that the district court should have commenced a bifurcated trial on Awada's remaining claims or required Shuffle Master to refile its motion for summary judgment to comply with NRCP 56. However, this error is harmless as to Awada's contract-based claims against Shuffle Master as discussed. A party's rights to notice and an opportunity to be heard are paramount and do not vary based on the merits of the case. *Soebbing v. Carpet Barn, Inc.*, 109 Nev. 78, 83, 847 P.2d 731, 735 (1993). Although the district courts "have the inherent power to enter summary judgment *sua sponte*," that power is subject to the requirements of NRCP 56. *Soebbing*, 109 Nev. at 83, 847 P.2d at 735. NRCP 56(a) and (b) allow the parties to an action to move for summary judgment on their opponent's claims. NRCP 56(c) sets out the procedural requirements that must be followed prior to granting summary judgment. Those procedures include the service of a motion, a response, and a minimum amount of time that must pass before a hearing on that motion can be conducted. " 'Once [a] district court allow[s] [a] claim to be added . . . , it [can] be disposed of only in accordance with the Rules of Civil Procedure and the dictates of due process.' " *Soebbing*, 109 Nev. at 83-84, 847 P.2d at 735 (quoting *U.S. Dev. Corp. v. Peoples Federal Sav. & Loan*, 873 F.2d 731, 736 (4th Cir. 1989)).

*Rescission*

Having determined that the district court had authority to bifurcate the legal and equitable claims in this case, we now turn to whether the district court abused its discretion by rescinding the parties' agreement. The district court found that rescission was proper in this case because (1) Awada fraudulently induced Shuffle Master to sign the agreement and (2) Awada failed to perform under the agreement. Awada argues that the district court's findings are not supported by substantial evidence and that rescission is improper. We conclude that the district court's findings are supported by substantial evidence[27] and that the district court did not abuse its discretion[28] by rescinding the parties' agreement.

A party to a contract may seek a rescission of that contract based on fraud in the inducement.[29] In this case, as substantial evidence supports the district court's decision to rescind the contract based upon its finding of fraud in the inducement, we need not address the district court's alternative basis for rescission, grounded on Awada's purported failure to perform.

To establish fraud in the inducement of a contract, a party must prove, among other things, that the other party made a false representation that was material to the transaction.[30] In this case, the district court's finding that Awada misrepresented his ownership interests in the game is supported by (1) the agreement, wherein Awada represented that he and GEI were the sole owners of the game; (2) a copy of Awada's agreement with IGT, wherein he granted to IGT his rights to the name 3 Way Action before executing the agreement with Shuffle Master; (3) testimonial evidence supporting Shuffle Master's claim; and (4) evidence that after entering into the agreement, Shuffle Master had to negotiate a separate agreement with IGT in order to use the name 3 Way Action. We conclude that this evidence is adequate to support the district court's finding that Awada fraudulently induced Shuffle Master to

---

[27]*See Keife v. Logan*, 119 Nev. 372, 374, 75 P.3d 357, 359 (2003) (concluding that this court "will not disturb a district court's findings of fact if they are supported by substantial evidence").

[28]*See Havas v. Alger*, 85 Nev. 627, 631, 461 P.2d 857, 860 (1969) ("Whether rescis[s]ion shall be granted rests largely in the sound discretion of the [district] court.").

[29]*See id.* at 631, 461 P.2d at 859.

[30]*J.A. Jones Constr. v. Lehrer McGovern Bovis*, 120 Nev. 277, 290, 89 P.3d 1009, 1018 (2004); *Pacific Maxon, Inc. v. Wilson*, 96 Nev. 867, 871, 619 P.2d 816, 818 (1980).

enter into the agreement. Therefore, we conclude that the district court acted within its discretion when it rescinded the agreement.

## Contract-based claims

Awada argues that the district court erred in dismissing all of his contract claims after rescinding the agreement. We disagree. ''Rescission is an equitable remedy which totally abrogates a contract and which seeks to place the parties in the position they occupied prior to executing the contract.''[31] ''[W]here there has been a valid rescission of the contract, there is no longer any contract to enforce and, therefore, no longer a cause of action for breach.''[32]

We have concluded that the district court properly ordered the parties' agreement rescinded. When the district court rescinded the agreement, it eliminated the basis for Awada's claims for breach of contract and the contract-based claims of breach of the implied covenant of good faith and fair dealing. Accordingly, we conclude that the district court properly disposed of those contract-based claims against Shuffle Master after it conducted the bench trial and rescinded the agreement.

## Awada's remaining claims

On the other hand, we conclude that the district court erred in disposing of Awada's claims against Shuffle Master for fraud, civil conspiracy, conversion, tortious interference with contractual relations/prospective economic advantage, and unjust enrichment. We further conclude that the district court erred in dismissing the claims against Yoseloff.[33]

Unlike Awada's contract-based claims, Awada's civil conspiracy, conversion, tortious interference with contractual relations/prospective economic advantage, and unjust enrichment claims do not rely on the existence of a valid contract between

---

[31]*Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 577, 854 P.2d 860, 861 (1993).

[32]*Great American Ins. v. General Builders*, 113 Nev. 346, 354 n.6, 934 P.2d 257, 262 n.6 (1997) (implying that the rule would apply to claims for both breach of contract and breach of the covenant of good faith and fair dealing); *see also Pacific Ins. Co. v. Kent*, 120 F. Supp. 2d 1205, 1214 (C.D. Cal. 2000) (''Where an insurer prevails on its rescission claim, any breach of contract and bad faith counterclaims brought by the insured are necessarily precluded.'').

[33]Awada sued Yoseloff for fraud, civil conspiracy, and tortious interference with contractual relations/prospective economic advantage.

Awada and Shuffle Master. Therefore, they were not eliminated automatically when the district court rescinded the parties' agreement. Instead, the district court adjudicated Awada's claims against Shuffle Master without giving Awada notice and an opportunity to be heard as required under NRCP 56. It adjudicated Awada's claims against Yoseloff in an identical manner. Therefore, there may be genuine issues of material fact which must be resolved as to those claims, and additional proceedings are necessary.[34]

## CONCLUSION

Nevada district courts have discretion to bifurcate equitable and legal issues raised in a single action, conduct a bench trial on the equitable issues, and dispose of the remaining legal and equitable issues in the action, so long as the disposal of those issues is available under Nevada law. Therefore, in this case, the district court acted within its discretion when it bifurcated the parties' claims in order to try Shuffle Master's claim for rescission.

With respect to the district court's rescission determination, we conclude that substantial evidence supports the district court's findings. Therefore, we affirm that portion of the district court's judgment rescinding the agreement.

We further conclude that the district court did not err in its adjudication of Awada's breach of contract and contract-based breach of the implied covenant of good faith and fair dealing against Shuffle Master. However, because the district court adjudicated Awada's remaining claims without conducting the second portion of the bifurcated trial or adhering to the procedural requirements of NRCP 56, we reverse the district court's judgment to the extent that it resolved Awada's fraud, civil conspiracy, conversion, tortious interference with contractual relations/prospective economic advantage, and unjust enrichment claims against Shuffle Master and his claims against Yoseloff. We remand this case to the district court for further proceedings consistent with this opinion.[35]

HARDESTY, DOUGLAS, CHERRY and SAITTA, JJ., concur.

MAUPIN, C. J., concurring:
I concur in the result reached by the majority.

---

[34]*See generally Wood v. Safeway, Inc.*, 121 Nev. 724, 121 P.3d 1026 (2005) (discussing the proper application of NRCP 56).

[35]We have considered the parties' other arguments and conclude that they lack merit. In light of this opinion, Awada's appeal from the district court's order denying him a new trial is dismissed as moot.