GREAT AMERICAN INSURANCE COMPANY, AN OHIO CORPORATION, APPELLANT, *v.* GENERAL BUILDERS, INC., A NEVADA CORPORATION DBA AMERICAN GENERAL DEVELOPMENT, RESPONDENT.

No. 27352

GREAT AMERICAN INSURANCE COMPANY, AN OHIO CORPORATION, APPELLANT/CROSS-RESPONDENT, *v.* GENERAL BUILDERS, INC., A NEVADA CORPORATION DBA AMERICAN GENERAL DEVELOPMENT, RESPONDENT/CROSS-APPELLANT.

No. 27578

March 6, 1997                    934 P.2d 257

*Lionel, Sawyer & Collins* and *Richard W. Horton* and *Madelene C. Amendola,* Reno, for Great American Insurance Company.

*Bible, Hoy, Trachok & Wadhams* and *Michael Hoy,* Reno, for General Builders, Inc.

**OPINION**

*Per Curiam:*

General Builders, Inc. is a Nevada building contractor specializing in the construction of commercial and public works projects. John Sieben is the president and a principal shareholder of General Builders. On May 10, 1994, General Builders was awarded a public works contract to enlarge and remodel the Humboldt General Hospital ("the Hospital") in Winnemucca, Nevada. However, after the Hospital determined that the payment and performance bonds submitted by General Builders as a part of its bid were inadequate, the Hospital gave General Builders ten days from the date of the "Notice of Award" to furnish accept-

able payment and performance bonds for the project, or forfeit the contract.

Sieben, knowing that he had to obtain the required surety bonds by May 20, 1994, contacted a number of surety bond brokers including Surety Underwriters, Ltd. Surety Underwriters in turn contacted Pac Coast Bond and Insurance Services ("Pac Coast"), a California agent of Great American Insurance Company ("Great American") authorized to sell Great American bonds. Pac Coast issued the requested bonds as attorney-in-fact for Great American and delivered them to Surety Underwriters who, in turn, notified Sieben that the bonds were ready. Sieben then flew to the southern California office of Surety Underwriters, inspected the bonds, the power of attorney form attached to the bonds, and the Great American corporate seal, paid the $125,000.00 premium, and returned to Nevada with the bonds.

At trial, Great American offered evidence that, under the agency agreement between Pac Coast and Great American, Pac Coast was only authorized to issue bonds with the express prior approval of Great American. In this instance, however, due to confusion at Pac Coast, Pac Coast issued the bonds without seeking approval from Great American. Nevertheless, it is undisputed that Pac Coast's agent, Kim Smith, executed the bonds as attorney-in-fact for Great American, embossed the bonds with Great American's corporate seal, and attached a power of attorney to the bonds executed by Great American which purported to confer on Smith the authority to "execute in behalf of [Great American], as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof."[1]

The fact that the bonds were issued without actual authority came to the attention of Bill Jarvis, a "senior bond claim lawyer" in Great American's Seattle, Washington office. On May 19, 1994, Jarvis informed Sieben and the Hospital that the unauthorized bonds would be revoked by Great American. By telephone and in a confirming letter to Sieben, Jarvis emphasized that the bonds were being revoked because the issuing agent lacked authority to issue the bonds and not due to any fault or misconduct of General Builders.

On the same day, May 19, 1994, Jarvis received an internal memorandum from one of the lawyers under his supervision. The letter advised Jarvis that the surety contract between Great Amer-

---

[1]According to the Great American form upon which Pac Coast applied for power of attorney as a Great American agent: "A power of attorney is the written evidence to the public of the individual attorney-in-fact being able to sign, seal, and deliver a bond. It gives no authority to the attorney in fact."

ican and General Builders was binding because of the apparent authority of Kim Smith. The letter also advised Jarvis that Great American would be liable under the contract unless the contract could be rescinded or unless some other legal basis for avoiding enforcement of the contract could be found.

Great American's revocation of the payment and performance bonds resulted in the Hospital declining to award the construction contract to General Builders. This litigation followed.

General Builders asserted claims for, *inter alia,* breach of contract and tortious breach of the covenant of good faith and fair dealing. General Builders sought compensatory and punitive damages, as well as attorney's fees and costs. In response to cross-motions for summary judgment, the district court ruled: (1) that a valid contract of surety was formed between Great American and General Builders based on the apparent authority of Great American's agent, Pac Coast; and (2) that a material issue of fact remained as to whether Great American breached the contract of surety when it revoked the bonds.

The district court rejected Great American's pre-trial motion to preclude jury instructions on punitive damages. Great American brought the motion on the premise that, as a matter of law, General Builders was not entitled to punitive damages for tortious breach of the covenant of good faith and fair dealing as no special relationship existed between General Builders and Great American. The district court also ruled that Great American was not entitled to argue rescission of the contract of surety because Great American had not pleaded rescission as an affirmative defense to breach of contract.

At the close of the evidence at trial, the district court granted General Builders' motion for a directed verdict on its breach of contract claim, and *sua sponte,* directed a verdict in favor of General Builders' claim of tortious breach of the covenant of good faith and fair dealing. The case was submitted to the jury for a determination of damages. The jury returned a verdict awarding General Builders $947,566.00 in compensatory damages and $2.5 million in punitive damages. Following entry of the judgment, Great American timely appealed to this court.[2]

*General Builder's motion for partial summary judgment on the issue of contract formation*

Summary judgment is only appropriate when, after a review of the record viewed in a light most favorable to the non-moving

---

[2]Also, in a series of post-trial orders the district court awarded General Builders attorney's fees in the amount of $150,971.68, prejudgment interest in the amount of $99,221.84, and costs in the amount of $22,523.76. These orders are the subject of the appeal and cross-appeal in Case No. 27578.

party, there remain no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). All of the nonmovant's statements must be accepted as true, and a district court may not pass on the credibility of affidavits. Sawyer v. Sugarless Shops, 106 Nev. 265, 267, 792 P.2d 14, 15 (1990). This court's review of an order granting summary judgment is *de novo*. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).

In a contract of surety, one party, the surety, binds itself to answer for the debt, default or miscarriage of another, the principal obligor. First Virginia Bank—Colonial v. Baker, 301 S.E.2d 8, 10 (Va. 1983). "The surety contract is formed at the time the surety's offer is accepted by the principal." Trident Corp. v. Reliance Ins. Co., 504 A.2d 285, 290 (Pa. Super. Ct. 1986). In Nevada, the surety's obligation to the obligee may take the form of a surety bond. *See* NRS 691B.020 (authorizing issuance of corporate bonds).[3]

In the present case, it is undisputed that Kim Smith of Pac Coast did not have actual authority to enter into the surety contract with General Builders on behalf of Great American. It is also undisputed that Great American had provided Smith and Pac Coast with Great American's corporate seal and unconditional Power of Attorney representing their authority to enter into surety contracts on behalf of Great American and to issue Great American bonds. The district court, therefore, granted General Builders' motion for partial summary judgment on the issue of contract formation on the ground that Great American had clothed Smith and Pac Coast with apparent authority to execute the surety contract as Great American's agent-in-fact.[4] Great American con-

---

[3]In the case of performance and payment bonds, the bonds are not for the protection of the principal; they are solely for the protection of, respectively, the contracting body (*i.e.*, the Hospital) and claimants supplying labor and materials to the contractor to whom the contract was awarded (*i.e.*, those making claims against General Builders). *See* NRS 339.024(1)(a) (performance bonds); NRS 339.025(1)(b) (payment bonds). Thus, the principal has no standing to make a claim against the bonds themselves. It follows that the present case, involving only a would-be surety and principal, is not a bond claims case. Consequently, NRS 691B.030, which greatly restricts a surety's ability to contest the validity of a surety bond, is inapplicable. NRS 691B.030 provides: "Any insurer which executes any surety contract as surety shall be estopped, in any proceeding to enforce the liability which it has assumed to incur, to deny its power to execute such contract or assume such liability."

[4]Great American appealed the district court's finding that Smith and Pac Coast had apparent authority to bind it in a contract of suretyship; however, Great American failed to raise another potentially viable argument. In Nevis

tends that the district court erred in concluding that the parties had formed a contract of surety as a matter of law because a question of fact exists as to whether General Builders' reliance on Pac Coast's apparent authority was reasonable.

A party claiming apparent authority of an agent as a basis for contract formation must prove (1) that he subjectively believed that the agent had authority to act for the principal and (2) that his subjective belief in the agent's authority was objectively reasonable. Smith v. Hansen, Hansen & Johnson, 818 P.2d 1127, 1135 (Wash. Ct. App. 1991). Apparent authority is, in essence, an application of equitable estoppel, of which reasonable reliance is a necessary element. Ellis v. Nelson, 68 Nev. 410, 418, 233 P.2d 1072, 1076 (1951); see also Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982) (elements of estoppel). As previously noted by this court, "the party who claims reliance must not have closed his eyes to warnings or inconsistent circumstances." Tsouras v. Southwest Plumbing & Heating, 94 Nev. 748, 751, 587 P.2d 1321, 1322 (1978). Apparent authority, including a third party's reasonable reliance on such authority, is a question of fact. Smith, 818 P.2d at 1133.

Great American enumerates a number of facts that it contends makes General Builders' reliance on Pac Coast's apparent authority unreasonable.[5] According to Great American, these facts were

---

v. Fidelity New York, 104 Nev. 576, 578, 763 P.2d 345, 346 (1988), this court stated that, "Courts recognize the serious obligation imposed upon a guarantor, and generally require evidence of specific authorization before finding that an agent has authority to bind his principal in a guaranty agreement."

In Nevis, we cited to Chicago Title Ins. Co. v. Progressive Housing, 453 F. Supp. 1103, 1106 (D. Colo. 1978), in support of our holding. The Chicago Title opinion reasoned:

"Authority to bind the principal by a contract of guaranty or suretyship is not ordinarily to be implied from the existence of a general agency. 'Such a contract is extraordinary and unusual and not normally within the powers accruing to an agent by implication . . . ; ordinarily the power exists only if expressly given.' "

Chicago Title, 453 F. Supp. at 1106-07 (citations omitted); (emphasis added); see also Williston on Contracts § 277A, at 230 (3d ed. 1959 & Supp. 1996) ("However general the character of the agency may be, a contract of guaranty or suretyship is not normally to be inferred from such an agency.").

Arguably Great American had clothed Pac Coast with something more than a "general agency," considering the language of the power of attorney attached to the bonds.

[5]For example: General Builders had a great deal of experience obtaining bonding and therefore knew, or should have known, that surety brokers do not have the authority to issue bonds without the prior approval of the surety;

sufficient to put General Builders on inquiry notice, requiring General Builders to contact Great American directly to verify the validity of the surety contract rather than relying on Pac Coast's power of attorney and other indicia of authority. We conclude that in light of Pac Coast's power of attorney, provided by Great American, which represented Smith and Pac Coast as agents-in-fact with authority to enter into precisely the type of surety contract at issue in this case, the facts cited by Great American are not sufficient to raise a question of fact as to Pac Coast's apparent authority.

Great American also contends that no enforceable contract with General Builders exists because Great American cancelled the bonds before their effective date and before the Hospital accepted them. We disagree. A surety's obligation under the bonds to answer for the default or misconduct of the principal is distinct from the surety's obligation to the principal to issue the bonds. Moreover, although a surety's obligation to the intended obligee (in this case the Hospital) does not arise until the intended obligee has accepted the offer of surety (*i.e.*, the bonds), the surety's obligation to the principal to issue the bonds arises at the time the surety agreement is executed by the surety and the principal. Trident Corp. v. Reliance Ins. Co., 504 A.2d 285, 290 (Pa. Super. Ct. 1986).

We hold that the district court did not err in concluding that Great American and General Builders had formed a surety contract as a matter of law; the district court, therefore, did not abuse its discretion in granting General Builders' motion for partial summary judgment on the issue of contract formation.

*General Builders' motion in limine to exclude evidence relevant to Great American's affirmative defense of rescission*

At the hearing on General Builders' motion in limine, the district court ruled that Great American was not entitled to introduce evidence of facts that would justify rescission of the surety contract because Great American had not pleaded rescission as an affirmative defense.[6] ''Nevada is a notice-pleading

---

the bonds were obtained through Surety Underwriters who had previously provided unacceptable bonds to General Builders; Great American had refused to write an $800,000.00 bond for General Builders nine months previously; the $125,000.00 premium charged for the Great American bonds was much higher than the price for bonds provided by Surety Underwriters that the Hospital rejected; the only other surety that offered General Builders bonding for the project required collateral.

[6]Rescission is a remedy, equitable in nature, that allows an aggrieved party to a contract to abrogate totally, or cancel, the contract, with the final result

jurisdiction and pleading should be liberally construed to allow issues that are fairly noticed to the adverse party." Nevada State Bank v. Jamison Partnership, 106 Nev. 792, 801, 801 P.2d 1377, 1383 (1990). Great American contends that two of its affirmative defenses were sufficient, when construed liberally, to provide General Builders fair notice that rescission was being claimed as a defense to Great American's failure to perform under the surety contract. Affirmative defense No. 15 states: "The alleged bonds were withdrawn, revoked, *rescinded* or declared invalid by Defendant before the effective date of the alleged bonds and thus before the bonds could become effective." (Emphasis added.) Affirmative defense No. 18 states: "The alleged bonds were withdrawn before the alleged bonds were accepted by the Humboldt Hospital Board of Trustees."

We conclude that Great American did not plead rescission as an affirmative defense in its answer. Although affirmative defense No. 15 does use the word "rescinded" in reference to the bonds, the obvious import of both this defense and affirmative defense No. 18 is that Great American was claiming the right to avoid any obligation under the surety contract simply because it had the power to cancel the bonds, rather than the right to cancel the contract in response to a material breach by General Builders. We conclude, therefore, that the district court did not err in barring Great American's rescission evidence on the ground that Great American did not properly plead the defense.

### The punitive damages award

Great American contends that this is an ordinary breach of contract case and that the award of punitive damages was therefore improper. *See* NRS 42.005(1). We agree.

The *tort* action for breach of the implied covenant of good faith and fair dealing requires a special element of reliance or fiduciary duty, A.C. Shaw v. Washoe County, 105 Nev. 913, 915, 784 P.2d 9, 10 (1989), and is limited to "rare and exceptional cases," K

---

that the parties are returned to the position they occupied prior to formation of the contract. Bergstrom v. Estate of DeVoe, 109 Nev. 575, 577, 854 P.2d 860, 861 (1993). Rescission may be accomplished in one of two ways: In what is called "legal rescission," a party, in response to a material breach on the part of the other party or for other valid reasons, unilaterally cancels the contract; alternatively, in what is known as "equitable rescission," the aggrieved party brings an action in a court with equitable jurisdiction asking the court to nullify the contract. *A priori,* where there has been a valid rescission of the contract, there is no longer any contract to enforce and, therefore, no longer a cause of action for breach.

Mart Corp. v. Ponsock, 103 Nev. 39, 49, 732 P.2d 1364, 1370 (1987). We have recognized this type of reliance in various relationships, including those formed by employment, bailment, insurance, partnership, and franchise agreements, *id.* at 49-51, 732 P.2d at 1370-72; and that a plaintiff can assert a contractual claim and also one for fraud based on the facts surrounding the contract's execution and performance. *See* Amoroso Constr. v. Lazovich and Lazovich, 107 Nev. 294, 810 P.2d 775 (1991).

Tort liability for breach of the good faith covenant is appropriate where "the party in the superior or entrusted position" has engaged in "grievous and perfidious misconduct." *Id.* at 49, 732 P.2d at 1371. Awards beyond ordinary contract damages are sanctioned where necessary to "make the aggrieved, weaker, 'trusting' party 'whole,' " and to fully punish the tortfeasor for his misdeeds. *Id.* Accordingly, we have denied tort liability in certain relationships where agreements have been heavily negotiated and the aggrieved party was a sophisticated businessman. *See* Aluevich v. Harrah's, 99 Nev. 215, 660 P.2d 986 (1983).

In *Ponsock,* we limited bad faith tort actions to those cases involving special relationships characterized by elements of public interest, adhesion, and fiduciary responsibility. *Ponsock,* 103 Nev. at 39, 732 P.2d at 1364. Although General Builders understandably devotes a considerable portion of its brief to the proposition that a special relationship existed between the parties, clearly the elements of a relationship which would support tort liability are not present in this case. The facts of this case do not raise the same public policy concerns implicated where an insurance company refuses to compensate a policyholder for losses covered by the policy. *See, e.g.,* United States Fidelity v. Peterson, 91 Nev. 617, 540 P.2d 1070 (1975). General Builders did not take out an insurance policy with Great American in order to be protected against potential property damage or other losses. Rather, the Hospital required bonds to be posted for its own security.

Moreover, the parties, both experienced commercial entities represented in the present transaction by professional and experienced agents, were never in inherently unequal bargaining positions. Furthermore, an award of expected profits is adequate because it requires Great American to account for its failure to provide the bonds as promised and because it makes General Builders "whole." The only harm General Builders has suffered is loss of the Hospital contract, a harm easily compensated with money damages. There is no insurance or other special relation-

ship in this case; therefore, we conclude that the district court erred in finding tortious conduct in this case and in allowing an award of punitive damages.

We conclude that (1) the district court did not err in entering summary judgment in favor of General Builders on the issue of contract formation; (2) the district court did not err in barring the admission of Great American's evidence on the affirmative defense of lawful rescission in response to material breach, as Great American had not adequately pleaded the defense; (3) the district court erred in directing a verdict in favor of General Builders on the issue of tortious breach of contract and in awarding punitive damages.[7]

We, therefore, affirm the judgment of the district court as it relates to the award of compensatory damages, vacate the award of punitive damages, vacate the post-trial orders awarding attorneys fees, costs, and prejudgment interest, and remand to the district court for recalculation of the amounts of reasonable attorney's fees, costs, and prejudgment interest, if any, in light of this opinion.[8]

SHEARING, C. J., SPRINGER and ROSE, JJ., and ZENOFF, Sr. J.,[9] concur.

[7]Great American also contends that the district court erred by instructing the jury to award a double recovery. This contention is without merit.

[8]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.

[9]THE HONORABLE THOMAS L. STEFFEN, then-Chief Justice, appointed THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE CLIFF YOUNG, Justice. Nev. Const. art. 6, § 19; SCR 10.