**In re Ronald CROSS, Debtor.**

**Ronald Cross, Plaintiff,**

**v.**

**Fleet Mortgage Corp. and Woolman Oval Holdings, LLC., Defendants.**

**Woolman Oval Holdings, LLC., Defendant/Cross–Claimant,**

**v.**

**Fleet Mortgage Corporation, Defendant/Cross–Defendant.**

**Bankruptcy No. BK–S–29679. Adversary No. 00–2154–RCJ.**

United States Bankruptcy Court, D. Nevada.

Sept. 21, 2001.

Jeremy T. Bergstrom, Joseph P. Reiff, Las Vegas, NV, for defendants.

Gary Gowen, Barbara L. Taves, Las Vegas, NV, for plaintiff.

ROBERT C. JONES, Bankruptcy Judge.

The Defendant/Cross–Claimant, Woolman Oval Holdings, LLC's (Woolman), cross-claim for lost profits was heard at trial in the above-entitled court on January 12, 2001. The Defendant/Cross–Claimant appeared by and through counsel of record, Joseph P. Reiff, Esq. The Defendant Fleet Mortgage Corp. (Fleet) appeared by and through counsel of record, Jeremy T. Bergstrom, Esq. of the law firm of Miles & Associates, LLP. The Plaintiff, Ronald Cross (Cross), appeared by and through counsel of record, Gary Gowan, Esq.

The Court, having read and considered the Statements, Briefs, and Replies, finding that the notice given of the hearing on

the Motion was adequate, and good cause appearing therefore,

**IT IS HEREBY ORDERED** that the Claim for Lost Profits is hereby **DENIED**.

## FACTS

The relationship between the Debtor Cross and the Creditor Fleet Mortgage began September 4, 1986 when Cross purchased property at 32 Sir Noble Street and executed a deed of trust in favor of Fleet for $74,787.00. The debtor filed for Chapter 13 bankruptcy protection on December 17, 1997. Apparently, questions arose as to Cross' mortgage payments and an order granting Fleet relief from the automatic stay was entered May 24, 1999. On that same date, Cross motioned the Court for reconsideration of its previous relief from stay order and for reimposition of the stay. Then, on October 4, 1999, Cross' Motion to Reconsider was granted subject to Cross remaining current on his mortgage payments.[1] If Cross were to fall into arrears, the order required that Fleet give Cross notice and ten days to cure any default. If the delinquency was not cured, the stay would be automatically lifted and Fleet could then proceed to foreclosure.

On March 9, 2000, Fleet issued a notice of default which was not answered in writing by Cross. Fleet then entered a Motion for Relief From Stay which was granted April 14, 2000. In reaction, Cross entered a Motion to Reinstate Automatic Stay on May 8, 2000. Despite this, Cross' home was sold to Defendant Woolman Oval Holdings, LLC for $73,827.18. On June 15, 2000, the instant adversary proceeding was filed by Cross to recover the foreclosed property. Woolman cross-claimed for lost profits. On September 28, 2000, an Order for Preliminary Injunction

was entered on the basis that Cross was not in default at the time the stay was lifted. A trial was held January 12, 2001 and this Court rescinded the foreclosure sale. Pursuant to the rescission, Cross is to recover title to the Sir Noble Street property. Therefore, the question remaining for this Court to decide is whether the third-party purchaser Woolman can recover expectation damages from Fleet as a result of Fleet's wrongful foreclosure.

## DISCUSSION

Under state and federal law, an act in violation of the automatic stay is void *ab initio*. Therefore, when a foreclosure sale is rescinded, the parties will be put, as nearly as possible, into the positions they held prior to the violation. The Third-Party Purchaser Woolman is entitled only to return of the funds expended at the sale plus interest and fees. To award damages as well would be to allow Woolman an unwarranted double recovery.

### I. Rescission

The Ninth Circuit Court of Appeals has determined that, considering the importance of the automatic stay, Congress "intended violations of the automatic stay to be void, rather than voidable." *Schwartz v. U.S.*, 954 F.2d 569, 571 (1992); *Phoenix Bond & Indemnity Co. v. Shamblin*, 890 F.2d 123, 125 (9th Cir.1989). As a result, courts in the Ninth Circuit have found that any act that violates the automatic stay is void rather than voidable. *See Blatnick v. Sanders*, 198 B.R. 326, 328–29 (Bankr.S.D.Cal.1996). This is the best approach for protecting debtors because, to hold otherwise would require that debtors spend a significant amount of time litigating creditors' claims and could en-

---

**1.** A Stipulated Order for Adequate Protection was entered August 4, 1999 with terms similar to those in the October 4, Order.

courage violations of the automatic stay. *See Schwartz*, 954 F.2d at 572. Additionally, when an order is judged void as a violation of the automatic stay, the stay will be regarded to have been continuously in effect from the date the petition was filed. A foreclosure sale held pursuant thereto will be deemed void and without effect. *See Great Pacific Money Markets v. Krueger*, 88 B.R. 238, 241 (9th Cir. BAP 1988).

 Further, this Court determined that the foreclosure sale of Cross' property was improperly conducted. Pursuant to that determination, the sale was rescinded. The Nevada Supreme Court has held that a contract is either valid or void *in toto*. *See Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 578, 854 P.2d 860, 862 (1993). "Because a rescinded contract is void *ab initio*, following a lawful rescission the 'injured' party is precluded from recovering damages for breach just as though the contract had never been entered into by the parties." *Id.* Additionally, "rescission of a contract demands as a general rule the restoration of the status quo of the parties." *Mackintosh v. Cal. Fed. Sav. and Loan Ass'n.*, 113 Nev. 393, 407, 935 P.2d 1154, 1163 (1997). Although complete restoration is not required, a court should attempt to put the parties as close to their original positions as is "reasonably possible and demanded by the equities of the case." *Id.*

## A. Arguments of the Parties

In its Brief in Support of Claim for Lost Profits, Woolman attempts to factually distinguish *Bergstrom* from the instant action. Woolman also argues that this case should be treated as a breached land sale contract and as such, the proper measure of damages is lost profits. Fleet counters that factual distinctions of *Bergstrom* made by Woolman are meaningless and

that the cases cited by Woolman are not applicable because the case at bar does not involve an arm's length land sale contract conducted by the parties to the sale.

A brief overview of *Bergstrom* is helpful in determining its applicability to the present circumstances. *Bergstrom* was based on an action for rescission of a contract for the purchase of a party's interest in an equipment rental business. 109 Nev. at 576–77, 854 P.2d at 861. The agreement between seller DeVoe and buyer Bergstrom provided that Bergstrom would buy DeVoe's interest for $80,000.00, payable in monthly instalments of $2,000.00. Also, Bergstrom's collateral was to have been substituted for DeVoe's. The Nevada district court rescinded the contract and awarded DeVoe the principal amount plus interest and the stock in the rental business. Bergstrom appealed the district court's decision, arguing that the rescission award precluded damages for breach. The Nevada Supreme Court agreed with Bergstrom and held that "it would have been proper to rescind the contract *or* to award damages for breach of that contract. It was, however, improper to both rescind the contract and to award damages for breach." *Bergstrom*, 109 Nev. at 578, 854 P.2d at 862.

The main factual distinction pointed out by Woolman is that two parties were involved in *Bergstrom* whereas the instant action included a third-party purchaser. While this may be true, the *Bergstrom* court was citing "the general canons of rescission" in its opinion. *Id.* As general cannons, they are applicable to this Court's rescission of the wrongful foreclosure sale of Cross' property. Thus, the factual peculiarities of *Bergstrom* do not preclude this Court from adopting its legal principles.

Woolman also argues that the proper measure of damages is the increased value

of the land at breach minus the contract price. This argument fails to address the fact that equitable rescission excludes a recovery from a breach because the contract is void from the beginning. *See Bergstrom,* 109 Nev. at 577–78, 854 P.2d at 862. Fleet properly notes that the Nevada Supreme Court has further defined equitable rescission as a proceeding whereby "the aggrieved party brings an action in a court with equitable jurisdiction asking for the court to nullify the contract. *A priori,* where there has been a valid rescission of the contract, there is no longer any contract to enforce and, therefore, no longer a cause of action for breach." *Great American Ins. Co. v. General Builders, Inc.,* 113 Nev. 346, 354, 934 P.2d 257 (1997). Additionally, under bankruptcy law, when an order is determined to be a violation of the automatic stay, it is void from the beginning (as is a foreclosure sale based thereon). *See Great Pacific Money Markets v. Krueger,* 88 B.R. 238, 241 (9th Cir.BAP 1988). As a result, when a transaction is deemed void as a violation of the automatic stay and the underlying contract is rescinded, there is no contract upon which to base a claim for consequential damages. Thus, cases measuring damages based on a breach of contract between two parties in a consensual sale are of no moment in determining the outcome of this action.

### B. This Court's Analysis

■ As Woolman's arguments regarding the applicability of *Bergstrom* and the use of lost profits as the measure of damages have been rejected, this Court will apply the principles governing violations of the stay and rescission of contracts enumerated above. Specifically, that any act that violates the automatic stay is void rather than voidable (*See Blatnick v. Sanders,* 198 B.R. 326, 328–29 (Bankr. S.D.Cal.1996)) and "a rescinded contract is void *ab initio.*" *Mackintosh v. Cal. Fed.*

*Sav. and Loan Ass'n,* 113 Nev. 393, 407, 935 P.2d 1154, 1163 (1997). Further, this Court will attempt to place the parties in positions as near as reasonably possible to that occupied prior to the foreclosure sale. This leads to the conclusion that since the sale of Cross' property was in violation of the automatic stay, it was void despite the Court's order lifting stay. Because the foreclosure sale has been equitably rescinded, there is no contract upon which Woolman can base a claim for lost profits.

■ If lost profits are not the proper measure of damages, what should a court do to help return the parties, as near as possible, to the status quo? The proper measure of damages suggested by both law and reason is the return of funds expended by Woolman to purchase Cross' property at the foreclosure sale plus interest and attorney's fees. *See Walker v. California Mortgage Service,* 67 B.R. 811 (Bankr.C.D.Cal.1986) (third-party purchaser was entitled to the "benefits of the rescission of the foreclosure sale" including the amount paid at the sale, plus interest at the legal rate). In unwinding the foreclosure sale, Woolman is entitled to regain the status held prior to the sale. Allowing interest and costs comes as close to the pre-sale state of things as is reasonable under the circumstances. In contrast, allowing the claimed lost profits in excess of twenty thousand dollars ($20,000.000) would place Woolman in a position substantially better than the one it occupied before the sale took place. By rescinding the foreclosure sale, returning title to the subject property to Cross, and returning sales proceeds paid to Fleet by Woolman plus interest and costs, this Court is preserving the *status quo ante.*

### II. Privity of Contract

The parties also dispute whether Fleet may be considered the seller at the fore-

closure conducted by the foreclosure trustee, Professional Lender's Alliance, LLC. Fleet's chief contention is that there was no contractual privity between Fleet and Woolman because the actual sale agreement was executed by the trustee and Woolman. Woolman argues that language in the order terminating the automatic stay suggests Fleet was the seller as does the fact Fleet was able to suggest the process for foreclosure. Under the present circumstances, it is unnecessary to address these specific arguments. As stated, a violation of the stay is void and a rescission of the underlying contract works to void that contract. Therefore, the contract in this case will be treated as a nullity. Attempting to determine what role each of the three parties played in the voided foreclosure sale would be superfluous.

## CONCLUSION

Under Ninth Circuit bankruptcy law, foreclosure sales made pursuant to an unjustified order lifting stay are violations of the automatic stay. Violations of the stay are void *ab initio*. Additionally, the Nevada Supreme Court has determined that the remedy of rescission works to nullify the underlying contract. Thus, there can be no claim for damages resulting from a breach of the abrogated contract. This Court found that the foreclosure on Cross' property was improperly conducted and should be rescinded. As a result, the parties are to be returned to their respective positions held prior to the foreclosure sale. Cross will be restored as title holder of the property and Woolman will receive the Seventy-Four Thousand Seven Hundred Eighty Seven Dollars ($74,787.00) expended at the foreclosure sale, plus interest and costs.

Therefore:

**IT IS HEREBY ORDERED** that the Defendant/Cross–Claimant Woolman Holding's Claim for Lost Profits is hereby DENIED.