Steven **MATTES**, Plaintiff–Appellant,

v.

**BALLYS LAS VEGAS; Paris Hotel & Casino; Park Place Inc.,** Defendants–Appellees.

No. 05–15248.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 2007.

Filed March 1, 2007.

Kevin J. Mirch, Esq., Marie Mirch, Mirch & Mirch, Reno, NV, for Plaintiff–Appellant.

Scott M. Mahoney, Esq, J. Randall Jones, Esq, Jennifer Popick, Esq., Harrison Kemp & Jones, Chtd., Mark S. Karris, Law Offices, Las Vegas, NV, for Defendants–Appellees.

Before: TASHIMA and CALLAHAN, Circuit Judges, and SCHIAVELLI *, District Judge.

## MEMORANDUM **

Steven Mattes, a high stakes blackjack player, appeals the district court's order setting aside an $8 million jury verdict in his favor and granting a new trial, and its subsequent grant of summary judgment in favor of Appellees Park Place Entertainment Corp. and Parball Corp. d/b/a Paris–Las Vegas and Bally's–Las Vegas (collectively, "Paris"), which were erroneously sued under other names. Mattes argues that the jury verdict was proper and should not have been set aside, and that even if that ruling is upheld, the district court should not subsequently have granted summary judgment to Paris in lieu of a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in all respects.[1]

We conclude that the jury's verdict was contrary to the clear weight of the evidence; therefore, the district court did not abuse its discretion in granting a new trial. *United States v. 4.0 Acres of Land,* 175 F.3d 1133, 1139 (9th Cir.1999); *Landes*

*Constr. Co. v. Royal Bank of Can.,* 833 F.2d 1365, 1371 (9th Cir.1987).

■ The breach of contract verdict was against the clear weight of the evidence because there was no substantial evidence that Paris agreed that the credit line could not be revoked, had a specific duration, or would be handled in a particular manner, and hence no meeting of the minds. *See, e.g., Roth v. Scott,* 112 Nev. 1078, 921 P.2d 1262, 1265 (1996) (outlining requirement for breach of contract); *Back Streets, Inc. v. Campbell,* 95 Nev. 651, 601 P.2d 54, 55 (1979) (same). Moreover, Mattes' subjective interpretation of the terms of the credit agreement were not supported by the language of the agreement or any other competent evidence.

■ The jury verdict on the breach of covenant claim was similarly contrary to the evidence. In order to recover on a contractual breach of covenant theory in Nevada, Mattes would have had to show that his reasonable or justified expectations were denied. *Perry v. Jordan,* 111 Nev. 943, 900 P.2d 335, 338 (1995); *Hilton Hotels Corp. v. Butch Lewis Prods.,* 107 Nev. 226, 808 P.2d 919, 923–24 (1991). Even if the evidence established that Mattes expected to be able to continue gambling, this expectation would have been legally insignificant because courts have regularly held that gamblers do not have rights to continue gambling on credit or other terms. *See, e.g., Uston v. Airport Casino, Inc.,* 564 F.2d 1216, 1217 (9th Cir. 1977) (stating that relationship between casino owner and prospective gambler did not implicate "[t]he policies upon which the innkeeper's special common law duties

---

* The Honorable George P. Schiavelli, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Because the parties are familiar with the facts and procedural history, we do not recite them except to the extent necessary to aid in understanding this disposition.

rested," and hence exclusion of gambler from casino was acceptable); *Spilotro v. State*, 99 Nev. 187, 661 P.2d 467, 471 (1983) ("Appellant does not have a constitutional right of access to businesses, such as casinos, that are generally open to the public.").

 Mattes' tortious bad faith theory fails as a matter of law, moreover, because he had no "special relationship" with the casino. Nevada courts have "limited bad faith tort actions to those cases involving special relationships characterized by elements of public interest, adhesion, and fiduciary responsibility." *Great Am. Ins. Co. v. General Builders, Inc.*, 113 Nev. 346, 934 P.2d 257, 263 (1997) (citation omitted). Mattes fails to point to any cases that have established a "rare and exceptional case" of special duty between a casino and a gambler, or that indicate that such a relationship might have arisen here. *Id.; Hilton Hotels Corp.*, 808 P.2d at 923 n. 4; *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1370 (1987). The fact that both the casino and Mattes are sophisticated in the business, moreover, counts against the implication of any special duty. *Great Am. Ins. Co.*, 934 P.2d at 263. Accordingly, the breach of covenant verdict was properly set aside.

The verdict was against the clear weight of the evidence on the fraud claim as well. Most importantly, the documents that Mattes relies on to establish the alleged fraud fail to demonstrate either the existence of a specific agreement that was violated or a misrepresentation. As to Mattes' claim that there was fraud in destroying evidence and that Bonanne mis-

represented to him that tapes would be maintained and reviewed and that any errors would be corrected, moreover, the evidence does not support Mattes' contentions. Mattes cites a letter he sent to Paris complaining about his stay in September 1999, but Mattes did not mention destruction of evidence or request that any evidence be preserved in this letter. Mattes' other exhibits are likewise inapposite, as for instance Trial Exhibit ("TE") 40, which is a *Hilton* document indicating that a certain tape "is saved," and not evidence that the Paris Casino destroyed tapes.[2]

Mattes' claim for fraudulent inducement fails because Mattes did not introduce any evidence that the credit line was revolving in the manner he suggested. Moreover, Mattes' speculation about forged markers and accounting records is not supported with any foundation to indicate that documents were altered or that there is any nefarious reason for discrepancies.

The conversion claim is both based upon internal casino documents about which there is no evidence Mattes was competent to testify, and is nonetheless against the clear weight of the evidence because of the extensive testimony that the casino responded properly to Mattes' situation by applying the check against his debt. Accordingly, the district court properly set aside the jury's verdict for conversion, as well.

The defamation verdict in this case was also against the clear weight of the evidence. "A statement is defamatory when it would tend to lower the subject in the

---

**2.** As to an alleged misrepresentation about Mattes' credit, Mattes fails to point to specific evidence that he indeed had fine credit and that this was impugned by Paris. Although TE 4, a Hilton document, does indicate that Mattes was approved to receive $1 million credit, this fact does not establish that there

was fraud in any of Paris' concerns about Mattes ability to pay his debts. To the contrary, there was trial testimony from casino employees that the casinos evaluated credit independently, and also evidence that Mattes had had difficulties in repaying casinos in the past.

estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *K–Mart Corp. v. Washington,* 109 Nev. 1180, 866 P.2d 274, 282 (1993) (citation omitted). As Mattes notes, a statement is considered slanderous *per se* if it imputes that a plaintiff has committed a crime, and the plaintiff will not need to prove damages in such a case; instead, they are presumed. *Id.* at 283; *Branda v. Sanford,* 97 Nev. 643, 637 P.2d 1223, 1225–26 (1981).

That the casino had its own concerns about check kiting, however, did not impute that Mattes had committed a crime. Moreover, especially given Mattes' own denial that Bonanne accused him of check kiting and his and Patty Richards' attribution of his difficulties in Las Vegas to the *lawsuit* rather than to any accusation of check kiting, the district court properly concluded that a verdict for defamation was against the clear weight of the evidence. There is no evidence that Paris communicated its situation with Mattes to anyone outside his family, and even the communication to Mattes' family is only tenuously linked to an accusation of check kiting, which Mattes' family members, in any event, did not believe. The district court did not abuse its discretion in finding that Mattes was not accused, or damaged

from the fact of imputation, of kiting checks. Any non-check-kiting comments are inactionable either because they are too vague or because Mattes did not demonstrate that they were untrue.[3]

Furthermore, the district court did not erroneously hold it necessary to ascertain the jury's exact basis for damages on each claim, and instead properly concluded that the damages awarded were speculative and warranted setting aside the verdict. *Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers Local No. 287,* 175 F.3d 680, 689 (9th Cir.1999). Notably, to the extent that the basis for the damages award appears to have been prospective earnings from gambling that Mattes was allegedly denied, such a theory has been regularly rejected by the courts, which refuse to allow recovery of speculative damages. *Frantz v. Johnson,* 116 Nev. 455, 999 P.2d 351, 360 (2000); *Peterson v. Wiesner,* 62 Nev. 184, 146 P.2d 789, 799 (1944). Mattes' conjectural testimony and briefing based on internal casino documents is insufficient to establish a basis for damages. Accordingly, it was not an abuse of discretion for the district court to respect established rules against speculative damages. For all of these reasons, the district court's setting aside of the jury's verdict was proper.[4]

---

**3.** Mattes' slander by "pantomime" theory, based on Mattes' being escorted from the casino, is untenable. The case of *Washington,* which Mattes cites, found defamation by pantomime where the plaintiff was approached on suspicion of shoplifting and then "grabbed [], chased [], tackled [], handcuffed [], and then led [] back into the store in front of a crowd of people." 866 P.2d at 283. The circumstances surrounding Mattes' treatment, in contrast, would not impute that Mattes was guilty of a crime.

**4.** There is no indication in the record that the district court used its post-trial conversation with jurors as a basis for its subsequent rulings or to impeach the verdict, thereby running afoul of the law or Federal Rule of Evidence 606(b). Although "[a] juror's observations may not be used as grounds to grant a new trial absent exceptional circumstances," *4.0 Acres of Land,* 175 F.3d at 1140, the comments at issue here were not used as a basis for the district court's decision, contrary to the situation, for instance, in *4.0 Acres of Land. See id.*

We need not reach the issue of bifurcation of the punitive damages phase of trial or the merits of the punitive damages award, because other defects in the verdict, as the district court acknowledged, necessitated setting aside the verdict. *See, e.g., Consolidated Data Terminals v. Applied Digital Data Sys.,* 708 F.2d 385, 388 (9th Cir.1983) ("We likewise

We further conclude that the district court did not err in granting defendants' motion for summary judgment post-trial, a question we review de novo. *Universal Health Servs. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir.2004); *Seattle–First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1196 (9th Cir.1996). Notably, we do not need to reach the merits of the summary judgment arguments raised below, because Mattes simply refers this court to his arguments there for why summary judgment should not have been granted. Incorporation of arguments by reference in this manner is prohibited. 9th Cir. R. 28–1(b); Fed. R.App. P. 28(a)(9)(A); *Cmty. Commerce Bank v. O'Brien*, 312 F.3d 1135, 1136 (9th Cir.2002). However, even if we address the merits of the motion for summary judgment, the grant was proper given Mattes' lack of personal knowledge of the documents he interprets and his failure to demonstrate elements of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment," *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir.2002) (citations omitted), and a party opposing summary judgment "must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [Fed.R.Civ.P. 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") (cita-

tions omitted); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987) ("[I]f a *rational* trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied.") (citation omitted) (emphasis added).[5]

Mattes' breach of contract claim fails because there is no evidence to establish that he was damaged, even accepting that there was a genuine issue of material fact about the existence of an agreement in this case. Gamblers do not have established rights to continue gambling at particular casinos. Moreover, with respect to internal casino documents and policy, Mattes failed to establish that he possessed the requisite personal knowledge to testify on these topics, and summary judgment was proper.

Mattes' claim for breach of covenant fails because there was no evidence of an obligation on the part of Paris to allow Mattes to continue gambling, or of any special relationship between Mattes and the casino. *Great Am. Ins. Co.*, 934 P.2d at 263; *Hilton Hotels Corp.*, 808 P.2d at 923 n. 4.

With respect to the fraud claim, moreover, Mattes fails to provide any properly admissible evidence to support his theories, because they are based on internal casino documents about which he had no demonstrated competence to testify, and the damages are purely speculative.

In fact, the evidence presented with respect to damages is too speculative for

---

vacate and remand the district court's award of punitive damages since they are dependent upon the outcome of the retrial on the tort issues.").

**5.** The district court noted, in deciding the motion for summary judgment, that it had "the benefit of having observed the universe of evidence at the November, 2002, trial of

Plaintiff's claims," but there is no indication—contrary to Mattes' assertion—that the district court improperly assessed the evidence for purposes of summary judgment by not viewing the evidence in the light most favorable to Mattes, or that the district court was motivated by any animosity towards Mattes in its decision.

each claim, since it hinges either on prospective gambling winnings or on Mattes's interpretation of documents about which he has no established expertise. This fact defeats Mattes' defamation claim, as well. Accordingly, summary judgment was properly granted against Mattes on each of these claims.

We further conclude that the district court properly ruled upon the conversion claim because, in its ultimate iteration, it involved gaming debts which were not evidenced by a credit agreement and, thus, falls squarely within the exclusive jurisdiction of the Nevada Gaming Control Board ("Board"). According to Nev.Rev.Stat. § 463.361(1), and unless otherwise provided, "gaming debts that are not evidenced by a credit instrument are void and unenforceable and do not give rise to any administrative or civil cause of action." Nev. Rev.Stat. § 463.361(1). Instead, such gambling debts are within the exclusive jurisdiction of the Board. *Erickson v. Desert Palace, Inc.*, 942 F.2d 694 (9th Cir. 1991); *Devon v. Unbelievable, Inc.*, 820 F.Supp. 528, 529 (D.Nev.1993); *Sengel v. IGT*, 116 Nev. 565, 2 P.3d 258, 260 (2000). As this court has previously observed:

> We do not believe the Nevada legislature intended to allow parties to avoid the administrative process simply by alleging fraud in a patent attempt to force a casino to turn over alleged winnings. Under NRS 463.361, *parties who assert they are owed a gaming debt, fraud or no fraud, are confined to the administrative process followed by state judicial review.*

*Erickson,* 942 F.2d at 697 (emphasis added). Mattes' claim falls clearly within this category, because he is attempting to recover a gaming debt allegedly owed, which

he argues he legitimately won or would have won. *See id.* at 696 (" 'Nevada characteristically categorizes suits to collect unpaid gambling winnings as gaming debts.' ") (citation omitted). The district court properly noted the evolution of Mattes' conversion theory during the course of the proceedings, and the shift in Mattes' theory appropriately convinced the district court that the claim was within the Board's exclusive jurisdiction.

For the reasons set forth herein, the orders of the district court setting aside the jury verdict and subsequently granting summary judgment in favor of defendants are

**AFFIRMED.**